JESSE C. EASTON *v.* CHARLES S. CLARK.

A factor cannot bind his principal by a disposition of his property, in any other way than by sale in the usual course of trade.

When the attempted transfer of property by an agent is made in a manner not within the scope of the authority confided to him, or with which the agent is not apparently clothed, no title passes, and the property may be reclaimed by the owner.

So when the purchaser gives to the agent his check for a part of the price, with a full knowledge that the agent designs to use the same for his own private benefit, the principal is not bound thereby.

APPEAL from Supreme Court. The action was brought to recover the value of about 165,000 feet of lumber (less freight and transportation charges), consigned by the plaintiff to one Eli Doolittle, at Brooklyn, for sale, under an agreement, as was alleged, that Doolittle was to sell the lumber, pay the freight on the same, and also to pay the plaintiff the cost of the lumber, at Wellsville, Allegany county, and the profits to be divided between the plaintiff and Doolittle, if there should be any.

The cause was tried before Mr. Justice MARVIN and a jury at the Allegany Circuit in December, 1859, and the plaintiff had a verdict. The court ordered the exceptions taken by the defendant to be heard in the first instance at General Term.

Upon the trial, it was proved that, in August, 1858, the plaintiff and one Eli Doolittle made an agreement, by which the plaintiff was to ship and consign lumber from Wellsville, Allegany county, to Doolittle, at New York city or Brooklyn; Doolittle to advance and pay the freight and charges, and sell it in New York or Brooklyn market, and out of the proceeds to retain the amount of his advances for freight and charges; then to pay the plaintiff what the lumber cost him at Wellsville; the balance, if any, to be divided equally between them; which one-half of such net profits, if any, Doolittle was to receive as his compensation for making such advances and sale. It was further proved that the plaintiff, in the fall of 1858, under this agreement, shipped and consigned to Doolittle about 320,000 feet of lumber in four canal boat loads of about 80,000

TIFFANY — VOL. VIII.  29

feet each. The first boat load was sold by Doolittle to Weydell & Co., in New York city, for $16 per thousand feet. Two boat loads (being 165,000 feet) were "stuck up" by him on his dock at Brooklyn, and were there in December, 1858. The remaining boat load was frozen in the ice on the Erie canal at Port Jackson. The lumber was shipped from Wellsville to Corning by railroad, and thence by canal and river to the city of Brooklyn; and previous to December 24th, 1858, Doolittle had paid the freight on the lumber, which amounted to $6.87½ per thousand feet; and the lumber had cost the plaintiff from $7 to $7.50 per thousand feet at Wellsville.

(The plaintiff, as is stated, only sought to recover his interest in the 165,000 feet of lumber which was in the city of Brooklyn.)

Evidence was then given, proving, or tending to prove, that, previous to December 24th, 1858, Doolittle had become indebted to the defendant, who also resided in Allegany county, in the sum of $1,000, for which he had given his note, and which had been indorsed by the defendant and transferred to Rushmore, Cone & Co., of New York; and he and his partner, one Carle, had also become indebted to defendant in the sum of $2,796.72. In the early part of December, the defendant sent his agent, Babcock, to New York to settle with Doolittle and get his pay; and after considerable negotiation, Doolittle executed to the defendant a bill of sale of the Brooklyn lumber, a boat load of his own lumber at Port Jackson, and his interest in the plaintiff's lumber there, and a quantity of lumber at Scio, Allegany county, for the consideration of $5,090. The Brooklyn lumber was included in this amount at $16 per thousand feet, and amounted to $2,640. The defendant paid Doolittle as follows: Rushmore, Cone & Co.'s check (which Doolittle said he required that day by two o'clock to pay a memorandum check of his own), $1,300; paid for him to J. & R. Wright, $200; assuming Doolittle's note to defendant for $1,000, and that had been transferred to Rushmore, Cone & Co., and was about falling due; and Doolittle & Carle's indebtedness to defendant, $2,796.72; amounting in the whole to $5,296.72. For this excess of pay-

ment, $206.72, Doolittle gave the defendant his due bill. The sale was an entire transaction, and no specific application of the cash paid to any portion of the lumber; and was made (as the evidence tended to show) with full knowledge by the defendant's agent of the plaintiff's interest and the terms upon which Doolittle had acquired the possession. The lumber was delivered, and the defendant subsequently disposed of it. The plaintiff made proper demands. The defendant claimed that he had purchased the lumber in good faith, and refused to recognize any claim or right in the plaintiff.

When the evidence closed, the defendant moved for a nonsuit, on the grounds: 1st. Doolittle had power to sell the lumber, and defendant purchased without any notice of the plaintiff's interest in the lumber, and also that there is a variance between the proof and complaint, and that an action for conversion could not be sustained. 2d. Doolittle had made advances on the lumber, and he and the plaintiff held it as tenants in common, and each tenant has the right to sell the entire property. 3d. The cash paid was equal to the plaintiff's interest in the lumber, and the sale conveyed an entire title to the property to the defendant. The motion for a nonsuit was denied, and the defendant excepted.

The court charged:

1st. That if the defendant purchased the property in payment of a precedent debt, he cannot protect himself against the plaintiff.

2d. If the purchase was made of all the lumber together, and the defendant paid cash $1,300 and $200, and the entire price of the whole lumber was paid on the account against Doolittle, and Doolittle & Carle, and the cash then advanced, and the defendant had notice of the interest of the plaintiff in the property, and that the cash then paid was to be used by Doolittle in paying his own debts and not in paying the plaintiff, the defendant cannot protect himself against the claim of the plaintiff. To which last charge the defendant excepted.

3d. The plaintiff's interest in the lumber was the value of it, less the advances and charges, and the half of the profits,

if any there should be; and for this the plaintiff is entitled to recover, if he is entitled to recover at all.

4th. If the defendant purchased the lumber, and paid in cash an amount equal to the value of Easton's interest in the lumber, and without notice that Doolittle received the $1,300 to be used by him in paying his own debt and not paying the plaintiff, he, the plaintiff, cannot recover.

5th. But if the defendant, with the view of obtaining payment of the debt owing to him by Doolittle & Carle, or Doolittle, purchased all the lumber and paid the $1,300, with knowledge of the plaintiff's interest, and with knowledge that Doolittle wanted the $1,300 to pay his own debt, and intended so to use it, and not to use it in paying the plaintiff, then the defendant is not protected, and the plaintiff may recover; to which last mentioned charge the defendant excepted, and also specifically excepted to that portion of the proposition upon the subject of the defendant's knowledge of what Doolittle was going to do with the $1,300; and also specifically excepted to that portion of the charge upon the subject of the defendant's knowledge of what Doolittle was to do with the money, upon the ground that there was no evidence in the cause showing that he had any such knowledge, or any in the case to authorize the court to submit the question to the jury.

The defendant asked the court to charge that the plaintiff can recover only the amount of his interest in the lumber, after deducting the money paid by the defendant on the purchase, to wit: the $1,300, the $200 to J. & R. Wright, and the $1,000 paid to Rushmore & Co., to take up the note they had against Doolittle. The court refused so to charge, and the defendant excepted.

The defendant also asked the court to charge, that the money paid Doolittle by the defendant, and especially the $1,300, must be applied to extinguishment *pro tanto* of the interest or claim of the plaintiff in the lumber over and above the interest or claim of Doolittle for advances made and liabilities incurred for freight and wharfage, and that the plaintiff is not entitled to recover, unless such claim or

interest exceeds the sum of $1,300 actually paid on the purchase. The court refused so to charge, and defendant excepted.

The defendant also asked the court to charge, that the demand of the plaintiff, and the refusal of the defendant to deliver up the whole lumber, is not such evidence of a conversion as will entitle the plaintiff to recover. The court refused so to charge, and defendant excepted.

The defendant also requested the court to charge, that the refusal of the defendant to pay over to the plaintiff the whole or any part of the proceeds from the sale of the lumber, does not entitle the plaintiff to maintain an action against the defendant for a tort or wrong. The court refused to charge any further on the subject, remarking that the case had been put to the jury upon other principles covering the whole case. The defendant excepted.

There was a verdict for the plaintiff for $1,291. The exceptions were heard at the General Term, and judgment given for the plaintiff on the verdict. The defendant has appealed to this court.

*A. P. Laning*, for the plaintiff.

*J. H. Reynolds*, for the defendant.

WRIGHT, J. The questions in the case arise upon exceptions to the refusal to nonsuit, to parts of the charge of the judge, and to the refusal to charge certain propositions as requested by the defendant. The leading facts on which the questions arise were mainly undisputed on the trial, and may be briefly repeated. In August, 1858, the plaintiff and one Eli Doolittle made an agreement, by which the plaintiff was to ship and consign lumber from Wellsville, in the county of Allegany, to Doolittle, at New York or Brooklyn. Doolittle was to advance the freight and charges, and sell it in that market, and out of the proceeds to retain the amount of his advances for freight, and then to pay the plaintiff what the lumber cost him at Wellsville, and the balance, if any, to be divided equally between them. This one-half of

the net profits was the compensation that Doolittle was to receive for making such advances and sale. Under this agreement, the plaintiff, in the fall of 1858, shipped and consigned to Doolittle 320,000 feet of lumber, in four boat loads, of about 80,000 feet each. Two boat loads, containing 165,000 feet, were received by Doolittle at Brooklyn, the lumber "stuck up" by him on his dock, and was there in December, 1858. It was the plaintiff's interest only in this lumber that was sought to be recovered. This lumber cost the plaintiff, at Wellsville, from $7 to $7.50 per thousand feet; and Doolittle, before the 24th of December, 1858, had paid the freight on it, amounting to $6.87$\frac{1}{2}$ on each thousand feet. Previous to the 24th of December, 1858, Doolittle had become indebted to the defendant, who resided in Allegany county, in the sum of $1,000, for which he had given his note, and which note the defendant had transferred to Rushmore, Cone & Co., of New York; and Doolittle and his partner, one Carle, had also become indebted to him in the sum of $2,796.72, as appeared by a settlement made that day. In the early part of December, the defendant sent his clerk and agent to New York to settle with Doolittle and get his pay; and after considerable negotiation, he obtained a bill of sale from him of the plaintiff's lumber at Brooklyn, a boat load of Doolittle's own lumber at Port Jackson, on the Erie canal, his interest in the plaintiff's lumber at that point, and a quantity of lumber at Scio, Allegany county. The sale was an entire transaction, amounting to $5,090, and in which the 165,000 feet of plaintiff's lumber at Brooklyn was included, at the valuation of $2,640. It was made with full knowledge, by the defendant's agent, as to the plaintiff's interest in the Brooklyn lumber, and the terms on which Doolittle had acquired the possession. The defendant, by his agent, paid Doolittle, by assuming his note for $1,000; agreeing to pay J. & R. Wright $200; Doolittle & Carle's indebtedness, $2,796.72; and Rushmore, Cone & Co.'s check for $1,300, leaving Doolittle in debt $206.72, for which sum he gave his due bill. The $1,300 check of Rushmore & Co. Doolittle required that day, by two o'clock, to pay a mem-

orandum check of his own. This appeared pretty plainly from the testimony. The defendant's agent testified, that after speaking to Doolittle about the Brooklyn lumber, the latter stated that he had the lumber, but had to have $1,300 in cash to pay a memorandum check that day by two o'clock, and that he, the agent, went to see if he could get the money for him. He got the $1,300 check, and delivered it to Doolittle. Upon the consummation of the sale, the 165,000 feet of lumber at Brooklyn, and all the lumber included in the instrument of transfer, was delivered, and the defendant subsequently disposed of it. The plaintiff afterward made proper demands; the defendant claimed that he had purchased the lumber in good faith, and refused to recognize any claim or right in the plaintiff.

The judge charged the jury, in substance, that, if the entire lumber was one purchase, and the entire price was paid in the account against Doolittle, and Doolittle & Carle, and in the cash advanced, and the defendant had notice of the plaintiff's interest, and that the cash advanced was to be used by Doolittle in paying his own debt, and not in paying the plaintiff, the defendant was liable for the plaintiff's claim; or if, with the view of obtaining payment of his debt, he purchased all the lumber, and paid $1,300, with knowledge of the plaintiff's interest, and that Doolittle wanted the $1,300 to pay his own debt, and intended so to use it, and not to pay the plaintiff, he is not protected, and the plaintiff may recover. This, I think, was not error. It is to be considered that the jury found all the facts assumed in the charge in favor of the plaintiff by their verdict. The point that there was no evidence authorizing the judge to submit the question to the jury, whether the defendant had knowledge that Doolittle wanted the $1,300 to pay his own debt, and intended so to use it, is not tenable. There was quite enough in the testimony of Doolittle and the defendant's agent, who negotiated the sale, to justify the submission of the question. The transaction, then, was a sale of the entire lumber, including the plaintiff's and other lumber belonging to Doolittle, for $5,090. The payment was for the entire lumber, without specific

application of any part of it to any portion of the lumber, and consisted in satisfying Doolittle's debt and that of Doolittle & Carle, amounting to $3,996, and in money, $1,300, which exceeded the amount of the purchase price by $206.72; but as Doolittle required $1,300 to pay his own debt, that day maturing, the defendant advanced him the amount and took his due-bill for the $206.72. So that, in fact, the defendant paid but $1,093.28, while the plaintiff's interest amounted to over $1,330. The purchase was with knowledge on the part of the defendant of the plaintiff's interest in and ownership of the lumber in Brooklyn, and also with knowledge that the cash paid on such purchase ($1,300) Doolittle wanted to pay his own debt, and intended so to use it, and not to use it in paying the plaintiff. The question is, whether this purchase protects the defendant against the claim of the plaintiff to his property. Doolittle, by the contract with the plaintiff, was to make advances, &c., to sell and apply the proceeds — first, in payment of himself; second, to pay the plaintiff the prime cost of the lumber; and, third, to divide the net profits between himself and the plaintiff equally. This constituted him an agent or factor of the plaintiff to sell in the usual way. He could not bind his principal by a disposition of the property in any other way than by a sale in the usual course of trade. (Story on Agency, § 60.) He was not authorized to exchange it in barter or pledge it, because there is no usage of trade to that extent; nor could he transfer it by way of security for his own private debt. (Story on Agency, §§ 92, 113.) It is well settled that, when the transfer of property is made in a mode which is not within the scope of the authority confided to an agent, or with which the agent is not apparently clothed, or held out to the public to be clothed, no title to the property passes, and it may be reclaimed by the owner. The purchaser is bound to take notice whether the agent is departing from the usage of trade. He is presumed to understand the restrictions and limitations imposed by the usage of trade upon a general agency (Story on Agency, §§ 224, 225); and when, in making the sale, the agent has departed therefrom, the principal may repudiate the act.

(*State of Illinois* v. *Delafield*, 8 Paige, 527.) I do not think the sale was in accordance with the authority of Doolittle as the factor of the plaintiff; and if not, the defendant was not protected by his purchase. It was not the contract of the plaintiff, because not in the usual course of trade, but was a contract for the sale of all the lumber in payment of a debt of the factor to the vendee, the assumption of other debts of the factor, and the delivery to him of a check for $1,300 (being $206 in excess of the purchase price) to be used immediately in payment of another debt of the factor. Why pay $1,300 in cash, being $206 in excess of the purchase price, taking Doolittle's due-bill for such excess, unless that amount of money was required by Doolittle for his own immediate use? Why not have limited the cash payment to an amount requiring no due-bill for any excess of payment? Simply because Doolittle must have $1,300 in money to pay a check of his, due at two o'clock that day.

The defendant did not agree to pay the money, nor did he pay it, to and for the use of the plaintiff. By the agreement he was to pay the money to Doolittle, for Doolittle's own use. Doolittle told him he must have the money by two o'clock to pay a memorandum check: procure the money for me, and you shall have all the lumber. It will hardly be claimed that the plaintiff would have made such a contract. The consideration was never paid to Doolittle, as the agent of the plaintiff, for the plaintiff. The defendant dealt with him as principal, knowing and disregarding the rights of the plaintiff. It was never the contract of the plaintiff, and it must have been, to have bound him. It was the contract of Doolittle and the defendant, and they united in converting the plaintiff's property. A purchaser from an agent intrusted with property for the purpose of sale, with knowledge of such agency, and that the agent is selling to raise money for his own purposes, and intending to apply it to his own uses, acquires no title as against the principal.

The case was not tried or submitted upon the theory that the defendant was liable as for a conversion of the whole lumber. Hence, I think the exception on that ground in the

motion for a nonsuit, and to the refusal of the judge to charge, is not well founded. The complaint truly stated the facts upon which the cause of action arose, and the claim was only for the value of the plaintiff's interest. This was clearly proved on the trial; and the defendant simply occupied Doolittle's place, retaining his interest. The action was not necessarily for the tort. There was an unauthorized sale of the property, by which, if the plaintiff should so elect, no title passed, and for which he might have maintained replevin or for a conversion, without a demand or tender of advances. But he had an election of remedies. He might waive the tort, and maintain his action for the proceeds of the sale. (Story on Agency, § 439.) So he might rely upon the sale of the property in question by the defendant as a conversion of it, in connection with the manner by which he obtained the possession, and recover the value of his interest, upon the ground that such disposition of the property was unauthorized, and was a fraud upon him.

I think the judgment should be affirmed.

SMITH, J. The principal questions in this case arise upon the defendant's exception to the charge that if the defendant, with a view of obtaining the payment of the debt owing to him by Doolittle, or Doolittle and Carle, purchased all the lumber and paid the thirteen hundred dollars with knowledge of the plaintiff's interest, and with knowledge that Doolittle wanted the thirteen hundred dollars to pay his own debt, and intended so to use it, and not to use it in paying the plaintiff, the defendant is not protected, and the plaintiff may recover.

The proposition was excepted to, as laying down an erroneous rule, and also on the ground that there is no evidence that the defendant had such knowledge sufficient to warrant the submission of that question to the jury. The two points may be considered together.

The defendant's counsel argues that as the sale was one which Doolittle, as the factor of the plaintiff, had the right to make, the title passed to the defendant, even if his agent knew that Doolittle did not intend to account to his principal,

and it was therefore error to instruct the jury that knowledge by the defendant's agent that Doolittle intended to apply the money in payment of his own debt vitiated the sale.

It is undoubtedly true, as a general proposition, that a purchaser in such case is under no obligation to follow the money paid in the hands of the factor, and see that it reaches the principal; but in view of the special circumstances established by the uncontradicted evidence in this case, the charge was not erroneous.

The purchaser was a creditor of Doolittle, and of Doolittle and his partner, to the amount of nearly four thousand dollars. Doolittle resided in Broome county, but in the year 1858 he was engaged in the business of selling lumber in the cities of New York and Brooklyn. In December of that year the creditor, who lived in Allegany county, sent an agent to New York to get pay of Doolittle. A negotiation ensued, lasting a week or ten days, during which the agent offered to buy Doolittle's lumber, including the lumber in question, to pay the debt. The verdict establishes that the agent knew of the plaintiff's interest in the lumber. Notwithstanding the agent testified that he was not apprehensive that Doolittle was in failing circumstances, yet the testimony shows, without dispute, that Doolittle was in need of money and embarrassed in his business, and the agent knew it. It was a condition of the sale that the defendant should advance thirteen hundred dollars in money to enable Doolittle to pay a memorandum check which he was obliged to meet on the very day of the sale. The defendant's counsel has suggested that there is no evidence that the check was made by Doolittle, or, if made by him, that it was on his own account; but as it appears that he regarded himself legally bound to pay it, the presumption is, in the absence of proof to the contrary, that the check was made by himself, and for his own debt. Still another debt, owing by Doolittle, amounting to two hundred dollars, was assumed by the defendant's agent, in part payment of the purchase price of the lumber. The balance was applied on the debts owing to the defendant, but was not enough to pay them in full. In addition to this conclusive evidence

that Doolittle was in debt, and that his debts were pressing him, it appeared that he owed for the rent of the dock in Brooklyn on which the plaintiff's lumber was piled, and that during the negotiation with the defendant's agent he offered a third person a bonus of fifty dollars to sell the lumber for him. These facts were known by the agent; indeed, it was from the latter circumstance that he learned that Doolittle had the Brooklyn lumber for sale. It also appeared that, during the negotiation, Doolittle and the agent talked about the prospect of the plaintiff getting his pay if the defendant should purchase the lumber and pay for it as proposed, and as the strongest assurance that could be entertained on that subject, Doolittle expressed the opinion that there was enough owing to him by Weydell & Co. to pay the plaintiff, and that if not enough from that source, he thought he could make it up. What were the pecuniary circumstances of Weydell & Co., or how much they owed to Doolittle, does not further appear. Under these circumstances, if Doolittle intended to apply the thirteen hundred dollars to his own debt, leaving the plaintiff to rely on Doolittle's general responsibility, and the defendant or his agent had knowledge of such intention at the time of the purchase, the instruction to the jury was correct. The transaction, in short, was this : The defendant made the purchase and paid one-third of the price in cash, to save a debt of twice that amount, owing by the factor; the factor made the sale, and consented that the defendant's debt against him should be paid thereby, in order to raise money to pay his indebtedness to other persons of less than half the amount owing to the defendant; and each of the parties intended that the plaintiff, whose property was thus used by them in the transaction for their own interest, should receive no part of its avails, but should be turned over to the responsibility of a person embarrassed and pressed by his debts, as the transaction itself shows Doolittle to have been. The parties may not have actually designed to cheat the plaintiff out of his pay; they may have expected that Doolittle would ultimately overcome his embarrassments, and be able to respond; yet the fact cannot be disguised that, by the

transaction, the defendant possessed himself of the plaintiff's property, knowing that the latter would get in exchange for it, not the proceeds of the sale, to which he was entitled at the time of the sale, but merely the chance of being able to collect of Doolittle, who was then embarrassed, as the defendant knew, and to whom the defendant was unwilling to give further credit and forbearance. The defendant cannot be regarded as a purchaser in good faith.

The judgment should be affirmed.

All the judges concurring.

Judgment affirmed.