By the Court:

Freedman, J.
The general doctrine undoubtedly is, that a broker employed to sell has no authority as such to receive payment, for the reason that he has no authority to sell in his own name. The duty of a broker, in general, is ended when he has found a purchaser and has brought the parties together, and evidence of a local usage, allowing mere brokers to receive payment in certain cases, is not admissible for the purpose of. establishing *45 authority in such brokers to receive such payment. But the plaintiff's in this case cannot, in my judgment, invoke the application of these general rules for their benefit. The evidence shows that Foxwell was more than a mere broker. He seems to have had general charge of the office of the plaintiffs at the time the clerk of the defendants purchased the coal there; he was behind the railing in plaintiff's’ office in the same manner, as a member or clerk of plaintiffs’ firm, and one of the plaintiffs testified that he had that privilege; he effected the sale in plaintiffs’ name without disclosing that he acted as a broker merely, and the sale was made openly in a business manner and in the presence of other persons; the next day Foxwell called at the office of the defendants and procured the name of the vessel, on board of which the coal was to be delivered; the coal was delivered accordingly ; after that he brought the company’s receipt for it, the bill of lading, and the bill for the price made out on one of the blanks with a printed billhead usually used by plaintiffs’ firm for that purpose, to the office of the defendants and finally demanded and received the money. Up to this moment the defendants neither knew nor suspected that they were dealing with a broker; they had had no previous acquaintance or previous dealings either with the plaintiffs or with Foxwell; they, therefore, had every reason to believe, and I cannot doubt that they did believe, that Foxwell was either a member of plaintiffs’ firm, or at any rate an agent clothed with general authority, and consequently did not hesitate to give him their check payable to the order of the plaintiffs, for which he signed a receipt in plaintiffs’ name. Thus it will be perceived that Foxwell not only negotiated the sale behind the railing in plaintiffs’ office, but that subsequently he had the possession of the evidences of the title to the property as well as to the money to be paid, and as his acts up to the time of payment including the presentation of the bill for the price had apparently been ratified by the plaintiffs in every particular, the defendants were justified in dealing with him as if he was authorized to collect bills and receive payment, and after having done so as innocent parties, *46 they have a right to invoke the protection of the rule, which holds the principal liable for acts of the agent done even in excess of the actual authority conferred upon the agent, provided such acts be within the scope of the apparent authority, and be such as an innocent third party, from the recognized acts of such agent, had a right to infer such agent was authorized to do. In cases of this description, the real question ip not what power was intended to be given to the agent, but what power a third person, who dealt with him, had a right to infer he possessed, from his own acts and those of Ms principal (Dunning v. Roberts, 35 Barb., 463; Bridenbecker v. Lowell, 32 Barb., 9).
In the cases relied upon by the plaintiffs in this action a different state of facts existed. In Higgins v. Moore (34 N. Y., 417), the referee found as matter of fact, that the sole authority of the agent was to sell, and that simply as broker, and he rested his judgment upon a custom or usage which he found to exist in the City of Hew York, that when grain is sold by a broker for the broker to have the bill for grain sold by him made out in Ms own name, and for Mm to collect the money from the purchaser, where the seller resides out of the city of Hew York; and on further examination, it will be found that at the time of making the sale, the defendant in that case did not know who was the owner of the rye, but before any part of the same was delivered, he knew that the plaintiffs were the owners thereof; and, in fact, the rye was delivered directly to the defendant by the plaintiff’s bargemen from the barge in which it was brought to the city. In Easton v. Clark (35 N. Y., 225) there was an unauthorized sale of the property, by wMch, if the plaintiff had so elected, no title passed. In the case of the New York Life Insurance and Trust Company v. Beebe (7 N. Y., 364) the agent was employed to obtain a loan for the respondent from the appellants, but Ms alleged declarations, wMch were relied upon, were entirely without the scope of such or any other agency. Instead of acting as the respondent’s agent he represented himself as acting in Ms own name and right, and on his own account, in effect denying any agency whatever, and the respondent did nothing *47 to mislead the appellants. These cases, therefore, do not help the plaintiffs. On the other hand it seems to be well settled, as a rule, based on principles of policy, propriety, and justice, that if a principal puts his agent in á position to impose on innocent third persons by apparently pursuing his authority, he shall be bound by the agent’s acts, for the reason that he, by his own acts and conduct furnishes the opportunity to the agent to deceive, and because such innocent third persons should not be made to suffer for the positive carelessness of the principal. The evidence in this case shows that the arrangements between Foxwell and the plaintiffs were generally very loose, indeed. Shortly before the sale to the defendants, Foxwell made some sales to other parties; he used plaintiffs’ billheads, presented the bills, received the checks to plaintiffs’ order, indorsed the latter in plaintiffs’ name, deposited them, thus indorsed, to plaintiffs’ credit, and plaintiffs ratified his acts. This evidence was not received for the purpose of showing that the defendants were in any wise influenced thereby, for they had no knowledge thereof, and had already rested their defence upon other testimony, but in rebuttal of statements made by plaintiffs upon the stand, to the effect that Foxwell never acted otherwise than as a broker for them, and in part refutation of the claim set up by plaintiffs generally, that because Foxwell was in point of fact a broker, and as such also sold for other houses, he must have acted as such in the particular transaction which plaintiffs had with the defendants. Ho error was committed by the admission of this evidence. It also appears that shortly after the sale to the defendants, Foxwell, at plaintiffs’ request, kept plaintiffs’ books for a short time, and collected bills for them. There is some evidence tending to show that during that time the bill of defendants was marked or crossed off plaintiffs’ books, and the fact that plaintiffs, although the sale was for cash, made no demand for the money upon the defendants until after the expiration of about two months from the time of the delivery by the defendants of their check to Foxwell, is not disputed at all. Upon the whole evidence there can be no doubt that the plaintiffs are alone *48 to blame, and that it would be highly inequitable to compel the defendants to pay a second time, upon the sole ground that plaintiffs’ agent, who to all appearances had full authority to receive payment, had none in point of fact. The defendants having thus been induced to part with their check, and the bank having paid the same, and charged the defendants therewith, it becomes immaterial to inquire by what means Foxwell got hold of the proceeds of the same, and for the same reason an examination of the cases cited by plaintiffs’ counsel, for the purpose of demonstrating that a check does not operate as a payment, unless expressly agreed to be received as payment, is unnecessary.
I am of opinion that the findings of "the court below are fully warranted by the evidence ; that no error was committed by the refusal of the court to find as requested by the counsel for the plaintiffs, and that, therefore, the judgment appealed from should be affirmed, with costs.