Barker, J.
The evidence tended to prove, and the jury were well justified in reaching the conclusion, that Tucker,the defendants’ salesman, made the special warranty as to the properties and qualities of the oil as set forth in the complaint; and that he also further agreed, if the plaintiffs suffered a damage by its use, the defendants would pay all the damages resulting therefrom.
We are thus brought directly to the main question of fact: Did Tucker have the authority from his principals to make.an agreement as to the quality of the oil, as the same is alleged in the complaint and found by the jury ?
*115 This is the serious and underlying question involved in the controversy. The learned judge, in his instructions to the jury as to questions of fact and law presented by the issues, stated to them in very distinct and appreciative language, that they must be satisfied from the evidence that Tucker had the authority from the defendants, either expressed or implied, to make the contract of warranty as claimed by the plaintiffs; and if he did not have such an authorization from his principals, the plaintiffs could not recover. And he also instructed the jury in substance, that from the facts and circumstances disclosed by the evidence, they would be justified in reaching the conclusion that the defendants had conferred upon their agent the authority to make the warranty, although they should find there was a failure to establish that they had given him special permission to make a contract of the nature and import claimed by the plaintiffs.
He gave them the further instructions, that there was evidence in the case to which he called their particular attention, which would justify them in reaching the conclusion that Tucker had a special delegation of authority to make the contract of warranty and to indemnify the plaintiffs against loss resulting from the defects in the quality of the oil.
The defendants contend that there was no evidence in the case authorizing the submission of the question to the jury as to whether Tucker, their agent, had special authority from them to make the agreement, and insist, on the contrary, that the proof establishes that he was expressly denied the power to make a warranty^ as to the quality of the oil. The defendants also insist, in view of the undisputed facts of the case, that the law does not infer that their agent had authority from them to sell the oil with a warranty as to its fitness for the use intended, and to indemnify the purchaser against loss arising from its use. We may first inquire what is the nature and extent of the authority which the law presumes a selling agent possesses on making a sale of merchandise for his principal ? The correct answer to the question is, as we think, he is presumed to be authorized to sell in the usual manner, and only in the usual manner in which goods or things of that sort are sold. The usage of the business in which a general agent is employed furnishes the rule by which his authority is measured. Hence, the general selling agent has authority to sell on credit, to warrant the soundness of the the article sold, when such is the common usage of the trade.
This power and the limitations placed upon him is in strict conformity to the elementary principle that an agent, *116 employed to do an act is authorized to do it only in the usual way of business. Story on Agency, § 60; Smith’s Mercantile Law, 144 (Holcomb & Cholson edition, 1850); Nelson v. Cowing, 6 Hill, 336; Easton v. Clark, 35 N. Y., 225; Smith v. Tracy, 36 id., 79; Ahern v. Goodspeed, 72 id., 108; Upton v. Suffolk County Mills, 11 Cush., 586.
The evidence will now be examined with a view of ascertaining whether by the usage of trade it was customary for manufacturers of wool oils to warrant the quality of the same, and to indemnify the purchaser against all loss arising from its use in the business to which it is applied.
The defendants gave evidence that there was no such usage or custom known to the trade. On this subject the evidence is all one way and is wholly uncontradicted.
The defendants called as a witness Isaac Weatherby, who had been engaged for many years in the manufacture of woolen goods in the state of New Jersey. He stated in substance, that it was not a usage or custom among dealers in oils to be applied to wool in process of manufacture, to warrant the quality of the oils sold, or authorize their salesmen to make warranty as to the character of the oil in any respect. Other witnesses engaged in the manufacture of carpets and woolen fabrics, and doing business in the states of Massachusetts, New York, New Jersey and the state of Maine, testified substantially to the same fact, that it was not a usage or custom of trade for dealers in oils of this character to give purchasers a warranty as to its quality and fitness for use.
As bearing upon the same question, reference may be made to the testimony of two of the defendants and as well as of their general agent, Sullivan, all of whom as witnesses made similar statments, that it was not the usage and custom of the trade for dealers in wool oil to sell with warranty as to quality.
Two of the plaintiffs, Mr. Nye and Mr. Wait, who made purchases of oil for their firm were witnesses, and who purchased the oil in question made no claim whatever that it was a usage of the trade for the purchaser to require the seller of oil to give a warranty in any respect as to the fitness of the article for use in the business for which it was intended. This evidence coming from so many distinct sources was not contradicted in any respect, nor was any evidence given that there was a custom among dealers in oils to give a warranty as to its character, or the results which would be produced by its use.
We are, therefore, of the opinion that the fact was not established that it is the custom of the oil trade to make sales with a warranty as to quality, and for that reason 4 case was not made from which it could be inferred that the de *117 fendants had conferred upon their agent, Tucker, the authority to make the warranty which he gave to the plaintiff as to the quality of the oil. In the absence of such a custom, the plaintiffs had no right to suppose that Tucker was acting within the limits of his authority when he gave them the warranty, upon a breach of which the action was founded.
In support of our conclusion on this point, reference may be had to some of the adjudged cases where the general rule, which has already been stated, was applied.
In Upton v. The Suffolk County Mills (3 Cush., supra), the defendant was a milling corporation engaged in the manufacture and sale of flour, and its general agent, on the sale of a large quantity of flour, intended to be shipped by the buyer from Boston to San Francisco for a market, made a warranty that the flour would keep sweet during the entire voyage. The defendant’s general agent, in the management of its business, was also its general selling agent and had no special instructions in regard to making sales and no special authority was delegated to him to make the warranty upon which the action was brought. It was held that the principal was not-liable for the contract or warranty made by its agent. The court remarked, that "as there is no evidence nor suggestion of usage to sell flour with a hazardous warranty that it shall keep sweet during a sea voyage, in which it must twice cross the equator, we deem it quite clear that nothing short of an express authority conferred on Alcott, the agent, by the defendant, would empower him to bind them by such a warranty.”
In Nelson v. Cowing (6 Hill, supra), the agent, on making a sale of pumps for his principal, made a warranty as to their quality; and it was held, that in view of the facts of that case, it was rightly inferred that the agent had the authority to bind his principals upon the contract of warranty, which he made in their name and behalf; and the court, in discussing the legal propositions, said: " When the owner sells by an agent, it may be presumed, in the absence of proofs to the contrary, that the agent has been clothed with all the usual powers for accomplishing the proposed end. So long as the agent is acting within the general scope of his authority, persons dealing with him are considered as dealing with the principal * * * his authority to warrant the quality or condition of the thing sold would be presumed until the contrary appeared.”
In Easton v. Clark (35 N. Y., 225), the question was discussed as to the powers of an agent to sell; and the rule was there stated to be that an agent could not bind his principal by disposition of the property in any other way than by a sale in the usual course of trade; and that the purchaser is *118 bound to take notice whether the agent is departing from the usage of trade in the contract which he proposes to make in the name of his principal. That it is to be presumed that a party dealing with the agent understands the restrictions and limitations imposed by the usage of the trade upon a general agency, and if the agent departs from such usage the principal may repudiate his act.
In Smith v. Tracy (36 N. Y., 79), the defendant gave to his agent _ the power and authority to sell his bank stock for cash and imposed a limitation as to the price; and the court in support of its conclusion, that the agent was without power in that instance to sell with a warranty cited with approval the rule as stated by Mr. Parsons in his work on contracts, that an agent employed to sell, without express power to warrant, cannot give a warranty which shall bind the principal, unless the sale is one which is usually attended with warranty.
All the authorities seem to concur, that where no express authority is given to a selling agent he is presumed to have conferred upon him by his principal the power to make a sale according to the customs and usages of the trade and nothing more.
There remains for consideration, the other question whether there was evidence produced upon the trial to justify the submission of the question of fact to the jury for them to pass upon, whether the defendants gave special authority to their agent to make the sale with a warranty as to the quality of the oil.
After a careful inspection of the record, we are unable- to find any evidence from which it can be inferred, that the agent had special permission to make the contract which he did with the plaintiffs. The agent testified that he had no authority to make the contract as claimed by the plaintiffs, and that he was expressly forbidden by the defendants to make a sale of the oil with a warranty of any description. Two of the defendants testified that they never gave Tucker, their agent, authority to sell with warranty, but expressly forbade him from making warranties or entering into any agreement to indemnify the purchaser against loss resulting from the use of the oil.
One item of the evidence pointed out to the jury by the judge in his charge from which they were instructed they might conclude that the agent had express authority to make the contract was this circumstance; after the plaintiffs had discovered as they supposed, that the oil was of poor quality and that they had suffered damages in consequence thereof, and on the 2d of August, 1884, they addressed to the defendants a letter, the first paragraph of which is as follows: “ When. *119 we first bought your Breton oil of you, we did so on the strength of your statements guaranteeing it to be equal to any wool oil in the. market, and a very easy oil to scour out, and against any damage that might arise from its use.” The balance of the letter relates to the nature and character of the damages, which they had sustained, and the extent of the same, and that it could be traced directly to the bad quality of the oil. To this letter, the defendants made reply on the twenty-fifth of August, and the first paragraph is as follows: “Tour favor to hand, we regret to hear of the trouble you have had, but must repudiate all responsibility for the same.” The balance of the letter relates to the circumstances under which the oil was shipped; and that the same was part of a larger quantity manufactured at one time all of which had been sold, but they had heard no complaints from their customers using the same.
In calling the, attention of the jury to this item of the evidence as bearing upon the question whether an express warranty had been given or not, the learned judge said: “There is other evidence upon this question of authority to warrant. You will recollect that after the attention of the plaintiffs was called to the working of this oil by their correspondent in New York, that is, called to the results which had occurred from the use of the oil, the plaintiffs wrote a letter to the defendants, in which they set forth, with great plainness and directness, the grounds of their claim upon the defendants for remuneration for the injury -Which they had received in the use of this oil, and you will remember that that letter expressly put the claim of the plaintiffs upon the ground that the agent of the defendant had sold this oil with warranty, had warranted it to be a good and proper oil for its purpose, a warranty to the extent of guaranteeing them against loss or damage in the use of the oil, and that in answering that letter the defendants made no reference whatever to the question of warranty, although in terms they repudiated the responsibility for the loss which the plaintiffs had sustained. They refused, without disclaiming for a moment that they had given the warranty in question. They did not deny it. Not only did not claim that Mr. Tucker, their agent, had given the warranty, but did not question that Mr. Tucker was not authorized to give the warranty. There was no law requiring the defendants to disclaim their responsibility on the ground that they did not give the warranty, or that their agent was not authorized to give it. But it is a question of probability for you. It is a question of presumptive evidence. What is the presumption in regard to the claim being made upon them expressly upon the ground of warranty? What is the probability? Would they have been *120 silent in respect to the warranty, or would they probably have disclaimed giving the warranty, or denied that their agent had authority to give it?”
We have quoted thus largely from the charge for the purpose of bringing out in this connection the importance which the learned judge gave to this item of the evidence. From the nature of his comments thereon, it is obvious that the jury could not have failed to understand that they would be justified in finding from the circumstances alone that the defendants gave express authority to their agent to make the agreement. We think that the letter and the answer, when read together, constituted no evidence whatever bearing on the question. If the defendants had remained silent and made no reply_ to the letter, the omission to do so would have been no evidence against them in the form of an admission that the statement was true.
The omission of one of the parties to ■ a transaction to answer a letter written to him, after the transaction, by the other party thereto, giving the latter’s version thereof, may not be taken as an admission of the truth of the statements in the letter; they are mere declarations of the writer in his own behalf, which do not demand an answer and are not admissible as evidence against the person to whom the letter was sent. Learned v. Tillotson, 97 N.Y., 1.
But it was replied to, and both were properly received in evidence as a correspondence between the parties. We think that the. defendants’ letter contained in effect a denial that the oil was. sold with warranty and a guarantee against all damages arising from its loss as stated in the plaintiffs’ letter; the claim which they repudiated was their liability to respond to the plaintiffs for the damages which they alleged they had sustained. The plaintiffs base their claim for redress upon the alleged warranty, and the first utterance made by the defendants in reply to this demand was to repudiate it. As we think there was a denial of the plaintiffs’ claim of warranty, the correspondence when read together made nothing in the plaintiffs’ favor upon that point. By an arrangement between the parties after the suit was commenced, the defendants’ general agent, Mr-Sullivan, and Mr. Agnew, also representing the defendants, had an interview with two of the plaintiffs with a view of • adjusting the claim. On the trial the defendants called as-witnesses in their behalf both Sullivan and Agnew, for the-purpose of proving the admissions the plaintiffs made-during that interview. They admitted that Tucker, the-agent in making the sale, did not make any warranty. In their interview with the plaintiffs, neither Sullivan nor Agnew made a denial of the plaintiffs’ claim, that Tucker' had power to make the warranty.
*121 This is alluded to in the charge as another circumstance from which the jury might find that the defendants did give express authority to Tucker to make the warranty.
We fail to see how the silence of these men on that subject is to be construed as an admission against the defendants. We are, therefore, of the opinion that the plaintiffs’ case was without evidence in support of their contention that Tucker had express authority to make the contract upon which the action is founded. The plaintiffs’ counsel, in support of the judgment, invokes the rule, that where a vendor sells an article of his own manufacture, to be used for a particular purpose, there is an implied warranty that the article is suitable for the use intended, and that the verdict of the jury was justified upon that view of the case, which was fairly presented by the evidence.
This question is not in the case as now presented, for it was held on the trial that the plaintiffs’ complaint was not framed so as to present that question, and the jury were so instructed; and the judge further ruled, as has been already stated, that the defendants could not recover unless they found that the agent had authority from the defendants, either express or implied, to make the warranty.
The questions which we have considered were presented by exceptions properly taken during the trial.
Exceptions were taken by the defendants to the rule of damages adopted. Upon the assumption that the plaintiffs made a case entitling them to recover for a breach of warranty, of tho nature and character of the one set forth in the complaint, we see no error in the general rule adopted for ascertaining the same. But if, upon another trial, the plaintiffs should make a case entitling them to a verdict for damages for a breach of warranty, which should in any respect vary from the one alleged in the complaint, then the general rule which we now approve may not be applicable.
Judgment and order reversed; new trial granted, with, costs, to abide event.
Smith, P. J., Haight and Bradley, JJ., concur.