GALWAY *et al. v.* NORDLINGER *et al.*

*(Supreme Court, General Term, First Department.* January 28, 1889.)

1. PARTNERSHIP—WHAT CONSTITUTES—COMMUNITY OF PROFIT AND LOSS.

An agreement by which two persons undertake to do a joint business, to be carried on in the name of one of them, the profits and losses to be divided between them, constitutes them partners.[1]

2. SAME—CONFLICT OF EVIDENCE—PROVINCE OF JURY.

In an action to charge defendant, as the partner of one P., the latter testified to the existence of such an agreement between him and defendant, and that moneys were advanced by defendant to be used in the joint business. The receipts given for such money stated that it was to pay for merchandise bought on joint account. P. also testified that statements were rendered by him to defendant, showing the condition of the business, and that the profits were divided between them, according to such statements. Defendant and his two sons testified that the arrangement was that money should be advanced to P. to be used in his business, and that as compensation for the use of the money defendant was to have a share of the profits. *Held,* that it was for the jury to say whether there was sufficient evidence to render defendant liable as a partner, he not being known in the business.

3. SAME—EVIDENCE—RECEIPTS.

The receipts given by P. to defendant for moneys advanced, which stated that such moneys were for the purchase of merchandise on joint account, were not conclusive as to the nature of the business to be carried on, but were open to explanation.

4. SAME—TRANSACTIONS WITHOUT SCOPE OF—NOTICE TO PARTNER.

The agreement provided for the doing of a joint business in buying and selling certain kinds of produce on commission. P. engaged to sell for plaintiff certain produce in a manner not authorized by such agreement. *Held,* in an action to charge defendant as a partner of P. for the proceeds of such produce, where the latter testified that he had informed defendant of the arrangement with plaintiff, and that defendant had assented to it, while defendant denied having been so informed, that the question as to whether the latter had assented to such arrangement was one of fact for the jury.

5. SAME—MISAPPROPRIATION BY PARTNER.

In such case, where the jury found that defendant had assented to the sale of the produce by P. for plaintiff in the manner agreed on, defendant cannot escape liability for the proceeds of such produce, on the ground that they had afterwards been misappropriated by P. without his knowledge.

6. SAME—INSTRUCTIONS.

The refusal of an instruction that P. was not authorized to enter into the arrangement with plaintiff was not error where the jury had already been instructed that the plaintiff could not recover from defendant unless the latter had assented to such arrangement.

7. SAME—SILENT PARTNER—LIABILITY.

The fact that plaintiff had no knowledge, at the time of his dealings with P., that defendant was a partner in the business, could not relieve defendant from liability for such proceeds if he was such in fact.

Appeal from circuit court, New York county.

Action by John Galway and others against Jacob D. Nordlinger and another. Judgment was given for plaintiff, and the defendant Nordlinger appeals.

Argued before VAN BRUNT, P. J., and BARTLETT and DANIELS, JJ.

*Wing, Shoudy & Putnam,* for appellant. *Townsend, Dyett & Einstein,* for respondent.

DANIELS, J. The recovery was for the proceeds of beans delivered to R. T. Pierce, who was carrying on business at the city of New York under that name, and which were sold by him in the course of that business. It was alleged in the complaint that the defendant Nordlinger was a copartner in trade with Pierce, carrying on a commission business in his name. The defendant's name was not known in the business, neither was it disclosed to the

[1] Concerning what constitutes a partnership, see Runnels v. Moffat (Mich.) 41 N. W. Rep. 224, and note; Railway Co. v. Johnson, (Tex.) 7 S. W. Rep. 838, and note; Klosterman v. Hayes, (Or.) 20 Pac. Rep. 426.

plaintiffs during their transactions, which have formed the foundation of the action. To render Nordlinger liable, therefore, for the moneys obtained on the sale of the beans, it was necessary that the proof should establish the fact that he was a partner with Pierce in carrying on this business. The evidence of Pierce alone was relied upon to prove that fact, and he testified that an agreement was made between himself and Nordlinger by which the latter was to advance money for the business, and that it was to be done on joint account, buying and selling on commission, and handling merchandise, and that a memorandum of an agreement to this effect was drawn and handed by him to the defendant Nordlinger. This, it is stated, underwent several unimportant alterations, and was finally, in substance and effect, accepted by Nordlinger. On his part another instrument was produced, substantially like the one introduced in evidence, during the direct examination of Pierce. The one produced during the cross-examination, which is more complete than the other, for the reason that no corrections appear upon its face, is in the following form: "NEW YORK, September 1, 1880. This is to certify that we, the undersigned, do agree to do a joint account business in buying, selling, and handling on commission oranges, lemons, dried fruit, Virginia peanuts, &c., &c., in the name of Robert T. Pierce. The capital invested in the said business to draw interest 6% per annum. The net profit or loss of the business to be divided as follows: Robert T. Pierce, five-eighths, ($\frac{5}{8}$,) and J. D. Nordlinger, three-eighths, ($\frac{3}{8}$.) The said business to continue until either one or both parties should become dissatisfied, when sixty days shall be allowed to collect in accounts and settle. In case the loss in the said business should not be greater than the profits, Mr. J. D. Nordlinger will be entitled to his capital put in first. Profit or loss, if any, then divided as above stated." And as it provided for carrying on a joint business, and a division of the profit and loss in the business between Pierce and Nordlinger, if it truly embodied the agreement they had made, it created a partnership between these two persons; for an agreement made by one person to advance money for the capital, or to be used, in the business of another, the profit and loss of which is to be divided between the parties, is sufficient to create a partnership. It contains all the attributes required for that purpose by the authorities. *Sage* v. *Sherman*, 2 N. Y. 417, 428. In this respect the case very materially differs from *Curry* v. *Fowler*, 87 N. Y. 33, and *Cassidy* v. *Hall*, 97 N. Y. 159, when there was no community of profit and loss, while in this case, according to this instrument, both parties were secured a participation in the profits, and subjected to the obligation of sustaining a share of the losses. But, as the business was carried on in the name of Pierce alone, and was unknown to the plaintiffs as a partnership, the law required them before they could recover in the action to establish the fact to a reasonable degree of certainty that a partnership did exist between these two defendants. *Gernon* v. *Hoyt*, 90 N. Y. 631. And this they endeavored to do by the testimony of Pierce, who not only stated this to be the nature of the agreement, but that the instrument drawn to embody it was delivered to and substantially accepted by the defendant Nordlinger. And it was further shown, to support the joint obligation of the defendants, that Nordlinger had from time to time delivered his checks to the defendant Pierce for moneys obtained upon them and invested and used in the business. Receipts were given for the checks by Pierce, stating that the money was obtained "to pay for merchandise bought on joint account." And the indication from this language contained in the receipts, when it was used, and that was the fact as to the greater part of the checks, was that these two persons were engaged in business in some manner not disclosed by the receipts, on their joint account. It was objected by the defendant that these receipts were conclusive and controlling, and that no further evidence than that which they supplied should be considered concerning the manner in which these persons were engaged in business. But that objection was rightly over-

ruled by the court, for no principle is better settled than that which permits receipts to be explained by oral evidence. Accounts were also stated to have been rendered by Pierce to Nordlinger, showing the state and condition of the business, and the amount of profits to be divided, and it was stated by this witness that the profits were divided between himself and Pierce, according to the statements of them contained in the accounts. And checks were produced, drawn by Pierce to the order of Nordlinger, and indorsed by him, for what appeared to be the latter's share of the profits.

The defendant Nordlinger and two of his sons were sworn as witnesses in his behalf, and their testimony tended to establish the relation of the parties to be that the defendant Nordlinger should loan money to the defendant Pierce, to be used in his business, for the use of which Nordlinger should receive three-eighths of the profits of the business, and that the money was advanced by means of the checks in performance of, and to carry out the intent of, this agreement. That created, however, no more than a question of fact, to be submitted, as it was, to the decision of the jury. There was no such preponderance either way as would have justified the direction of a verdict for either party, but the duty of the court was to submit the testimony to the jury for them to determine which of these statements was correct; and it was so submitted, clearly and fully, and the jury adopted the view of the evidence which was requisite to sustain the plaintiffs' action. But the writing which the jury, under the charge of the court, must have found to be the embodiment of the agreement made between the defendants did not extend the business which was to be carried on to the purchase and sale of beans, or to the handling of that commodity on commissions. Neither did it include such an arrangement as was made between the plaintiffs and Pierce for the sale of these beans, for the agreement under which they were obtained by the plaintiffs, and delivered to Pierce in the business, to be sold, did not provide for their sale on commission, as that is understood and known to be by the use of these terms. As the words were employed in this instance, it is to be assumed that they were understood by the parties to relate to the manner in which commission business is ordinarily transacted and carried on, and that is for a percentage upon the amount of the business done. The commission has been defined to be, "and it is, usually, the allowance of a certain percentage upon the actual amount of the value of the business done. As, for example, upon the value of the goods bought or sold in the course of the agency. The amount of the commissions allowed to auctioneers and brokers and factors and other regular agents is generally regulated by the usage of trade, at the particular place, or in the particular business, in which the agent is employed." Story, Ag. (4th Ed.) § 526; Whart. Ag. § 794; 2 Kent, Comm. (7th Ed.) 796; 1 Pars. Cont. (6th Ed.) 91. And the business, when not otherwise provided for, or regulated, is to proceed according to the established usage, under which it is commonly transacted. *Easton* v. *Clark*, 35 N. Y. 225, 232; *Bank* v. *Heilbronner*, 108 N. Y. 439, 15 N. E. Rep. 701. And the effect of this rule would be to exclude the transactions on which the plaintiffs have brought their action, were it not for the fact that it was assented in their behalf that the arrangement itself, under which the beans were received and sold, was brought to the knowledge of, and approved by, Nordlinger. According to the testimony of Pierce, the agreement which he made with the plaintiffs was that the latter were to purchase the beans in foreign countries, and bring them to the city of New York by steamer, there to be delivered to Pierce. His testimony is that the plaintiffs "were to furnish the capital for purchasing the beans. They were to purchase the beans, bring them here, and pay the duties. I was to sell them, and have one-quarter to one-half of the profits. I was to sell the goods in my own name, and collect the money." And upon his cross-examination this statement of the agreement with the plaintiffs was again repeated. But the omission of the original

agreement to permit Pierce to take these beans and sell them for a share of the profits, instead of commissions upon the sales, was one which the defendants might very well supply by a further arrangement between themselves, and so far extend the partnership as to include these transactions. And testimony was given by the witness Pierce tending to prove that the business had been extended in that manner, for he testified that he informed the defendant Nordlinger of these dealings in the beans. His statement was: "I told Mr. Nordlinger about that transaction after the purchase was made. I do not remember the date. That was similar to this transaction. There was a profit in the first of them. Mr. Nordlinger and I have frequently spoken in regard to this transaction. After it was made, and the property was bought, he at times asked me how they were selling." He also testified that he told Nordlinger that he was negotiating with Galway & Carsado for some beans in Naples; that an offer had been sent out by cable, which had been accepted. And then he added, "I told him what the transaction was." And from this evidence the jury were placed in a position where they were at liberty to infer that the defendant Nordlinger understood that the partnership business was being carried on and extended in this manner, and that he sanctioned and approved of it. In his evidence he denied these conversations, but that denial did no more than to present a question of fact for the jury to determine whose testimony on this subject was the most reliable. It was not controlling either upon them or upon the court, but it was for them to consider and decide whether knowledge of these dealings had been brought to the attention of the defendant Nordlinger, and were sanctioned and approved by him as a part of the partnership business. And by their verdict they must have adopted the view which was favorable to the plaintiffs, for that was submitted to them as an essential circumstance to be established to their satisfaction in support of the plaintiffs' case. Upon that subject the court stated to the jury: "Mr. Pierce states he consulted with Mr. Nordlinger, or, rather, he informed Mr. Nordlinger about these beans, and consulted with him about the probable cost of laying them down in the city of New York. If that be so, and Nordlinger assented to that transaction, he would be liable for any loss which might be sustained in regard to these beans; otherwise not." Upon each of these important facts the jury had evidence requiring them to act. It was such evidence as they might have found either way, in favor of the plaintiffs or the defendant. They adopted the view favorable to the plaintiffs, and, as the evidence will support that action of the jury, the verdict could not be set aside because of any deficient support afforded to it by the testimony.

It appeared by the evidence of Pierce that the money not paid over to the plaintiffs for the beans continued to be used by him in this business, and the court was asked to direct them "that if Pierce misappropriated the money of the plaintiffs, and used the same in his business without the knowledge of Nordlinger, that Nordlinger is not liable in this action." The court declined to give this direction, and the counsel for the defendant excepted. But that exception is not well supported, for if Pierce continued to use the money in the business, and it was afterwards lost in the course of its transactions, which was all that the proof on this subject sustained, that would not relieve the defendant from liability. If he became liable at all for the legal consequences of the transactions in these beans, he could not be relieved from that liability simply because Pierce had appropriated the money to the continuation of the business, instead of having paid it over to the plaintiffs. In the same connection the court was also asked to direct the jury, "if the plaintiffs assented to the use by Pierce of the money derived from the sale of their merchandise, they cannot recover against Nordlinger in this action." And the court substantially so directed the jury. But it was utterly unimportant that any such direction should be given, for there was not the slightest evi-

dence produced on the trial that the plaintiffs had assented to this use of their money by Pierce. An exception was also taken to so much of the charge as directed the jury that the plaintiffs' want of knowledge that the defendant Nordlinger was a partner did not affect the question of his liability. If he was a partner in law, and if it was subsequently discovered, then he could be held liable. This was fully conformable to the authorities, and the fact that the plaintiffs, in their dealings with Pierce, supposed and believed that they were with him as an individual only, when in fact the dealings were a part of the partnership business carried on by Pierce and the defendant Nordlinger, would not relieve the latter from liability for the indebtedness as an obligation of the firm. Collyer, Partn. (3d Amer. Ed.) § 478, and cases cited in note 3. The court was also requested to instruct the jury that under neither of the papers produced as statements of the agreement between Pierce and Nordlinger was Mr. Pierce authorized by Mr. Nordlinger to enter into any joint transaction with the plaintiffs. That was refused, and an exception taken to the refusal. But this request was too broad, for if the agreement between these persons was correctly stated in the papers, Mr. Pierce was authorized to enter into any joint transaction with the plaintiffs for the purchase of property or for the sale of such articles, on commission, as were mentioned in the papers. But if the request had been still more pointed it could have been of no benefit to the defendant, for the reason that the court had already instructed the jury that the plaintiffs could not recover unless Nordlinger assented to the transaction taking place between them and Pierce. As to the receipts, they were open to explanation. · They were not conclusive between Pierce and Nordlinger, or between the latter and the plaintiffs, as to the nature and terms under which the business was carried on. They had a tendency from their language to prove the fact to be that the defendants were engaged in business on joint account, but under what precise terms was not indicated. That was left open by this indefinite language, for other proof which was supplied to the satisfaction of the jury. Other exceptions were taken in the case, which do not require any special attention, for they fail to change the principles upon which it was submitted to the jury, and which are fully sustained by the authorities. The disposition of the action seems to have been in all respects comformable to the law. A very clear statement of the principles affecting the liability was submitted to the jury, and nothing now appears upon which the disposition which was made of it can be in any manner changed. Both the judgment and the order should be affirmed. All concur.