WHITE'S BANK OF BUFFALO, Respondent, *v.* WILLIAM MYLES, Appellant.

C. was carrying on business at Buffalo, doing his banking business with plaintiff; he needed and had a line of discounts with plaintiff, which he desired to continue, but plaintiff requested more security. Defendant, who was the father-in-law of C., residing in Canada, thereupon gave to plaintiff a letter of credit, as follows: "Please discount for Mr. Cummer, to the extent of $4,000. He will give you customers' paper as collateral. You can also consider me responsible to the bank for the same." In an action thereupon, *held*, that as the letter was ambiguous, evidence of the surrounding circumstances was competent; that viewed in their light it appeared that the letter was intended as a continuing guaranty; and that, therefore, defendant's liability did not cease with the discount and payment of the sum stated.

Also, *held*, that the statement as to customers' paper was not a condition or limitation upon the right to discount, nor did it limit or define the character of the paper to be discounted; and that defendant was liable for discounts, although not secured by such collateral.

Also, *held*, that a change in the business conducted by C., after the date of the letter of credit, with notice to plaintiff, did not affect defendant's liability for subsequent discounts; that plaintiff had the right to rely upon the guaranty until by some adequate notice defendant terminated his liability.

(Argued April 3, 1878; decided April 16, 1878.)

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial.

The nature of the action and the facts appear sufficiently in the opinion.

*R. L. Burrows*, for appellant. It was error to receive in evidence the declaration of defendant, made three or four days before his letter was written, for the purpose of proving his intent. (*Thompson* v. *Ketchum*, 8 J. R., 189; *Wolf* v. *Myers*, 3 Sand., 7; *Sinclair* v. *Jackson*, 8 Cow., 543; *Ellmaker* v. *Franklin F. Ins. Co.*, 5 Barr [Pa.], 183; Greenl. on Ev., § 277; 1 Bouv. L. Dic., 97; 2 C. & H. Notes to Phil. Ev., note 263, pp. 501, 502; id., note 271, p. 528; Cowen's Treatise [4th ed.], 602, § 1421; *Agawam Bank* v. *Strever*, 18 N. Y., 502.) The court erred in instructing the jury that if they believed Gridley's testimony the letter was a continuing security. (*Hayden* v. *Crane*, 1 Lans., 186; Burge on Suretyship, 40; *Russell* v. *Clark*, 7 Cranch, 69; *Rogers* v. *Warner*, 8 J. R., 119; *Whitney* v. *Groat*, 24 Wend., 83; *Fellows* v. *Prentiss*, 3 Den., 513; *Union Bank* v. *Carter*, 3 N. Y., 203–215; *Hall* v. *Rand*, 8 Conn., 561; *White* v. *Reed*, 15 id., 457.) The change in the proprietorship of the business terminated defendant's further liability. (*Cramer* v. *Higginson*, 1 Mason, 323; 2 Pars. on Bills and Notes, 134; *Davis Sewing M. Co.* v. *Lawrence*, 3 T. & C., 388; *Penoyer* v. *Watson*, 16 J. R., 100.) Unless the drafts in suit when discounted were accompanied by customers' paper, delivered to the bank as collateral, as required by the letter of credit, defendant cannot be made liable thereon. (*Lud-*

*low* v. *Simond*, 2 Cai. Cas., 1; *Brickhead* v. *Brown*, 5 Hill, 634; 2 Den., 375; *F. and M. B'k of Mich.* v. *Evans*, 4 Barb., 487; *Agawam Bank* v. *Strever*, 16 id., 82; *Walrath* v. *Thompson*, 6 Hill, 540; *Leeds* v. *Dunn*, 10 N. Y., 469; *Hamilton* v. *Van Rensselaer*, 43 id., 244; *Hunt* v. *Smith*, 17 Wend., 179; *Dobbins* v. *Bradley*, id., 422; *Robbins* v. *Bingham*, 4 J. R., 476; *Stewart* v. *Ranney*, 26 How. Pr., 283; *Gates* v. *McKee*, 13 N. Y., 237; *Strong* v. *Lyon*, 63 id., 172.)

*Sherman S. Rogers*, for respondent.    Evidence of the surrounding circumstances was properly admitted to aid the jury in construing the guaranty, and in determining the intended scope and object of the contract.    (*Knapp* v. *Warner*, 57 N. Y., 668; *Heffield* v. *Meadows*, Eng. L. R., 4 C. P., 595; *Bridger* v. *Pierson*, 45 N. Y., 601; *Page* v. *McDonnell*, 55 id., 299; *Field* v. *Munson*, 47 id., 223; *Blossom* v. *Griffin*, 13 id., 574; 1 Chitty on Con. [11th Am. ed.], 772.) The defendant was not entitled to notice of the dishonor of the paper.    (*Allen* v. *Rightman*, 20 J. R., 365; *Sterns* v. *Marks*, 35 Barb., 565.)

EARL, J.    This is a suit to recover of the defendant the amount of six drafts drawn by one Franklin D. Cummer, and discounted for him by the plaintiff.    The suit is founded upon the following letter of credit:

"TORONTO, 27*th March*, 1871.
"F. GRIDLEY, Esq., *Cashier White's Bank of Buffalo:*

"DEAR SIR — Please discount for Mr. Cummer to the extent of $4,000.    He will give you customers' paper as collateral.    You can also consider me responsible to the bank for the same.             Yours truly,

"W. MYLES."

The plaintiff recovered, and the defendant seeks to reverse the judgment upon several grounds, which I will briefly notice.

1. The letter is somewhat ambiguous upon its face.    Without some other light than that obtained from a simple perusal

of the letter, it is impossible to say with certainty whether it was intended as a guaranty for a single credit to the extent of $4,000, or as a continuing guaranty to that extent. In such a case a resort may be had to the surrounding circumstances, the nature of the business in which the credit was to be used, the situation and relation of all the parties and their previous dealings, and the negotiations which led to the giving of the letter, to enable the court to ascertain what was meant by the letter. The terms of the letter cannot be changed by such evidence, and no additional language can be imported into it. But the evidence is proper to enable the court to understand the meaning of the language used. (*Bridger* v. *Pierson*, 45 N. Y., 601; *Field* v. *Munson*, 47 id., 223; *Page* v. *McDonnell*, 55 id., 299; *Knapp* v. *Warner*, 57 id., 668; *Heffield* v. *Meadows*, 4 C. P. [Law Rep.], 595.) A case very much in point is that of *Heffield* v. *Meadows*. In that case the letter of credit was as follows:

"I, John Meadows, will be answerable for fifty pounds sterling, that William York, of Stamford, butcher, may buy of Mr. John Heffield.

"JOHN MEADOWS."

That seems as clearly to be a guaranty for a single sum as the one in this case. But the court held that upon the face of the paper there was ambiguity which justified a resort to the surrounding circumstances to ascertain what was meant. Among other things, the plaintiff was allowed to prove the negotiation and conversation which led to the giving of the paper. WILLES, J., said: "The question in this case is whether the guarantee declared on was a continuing guarantee for fifty pounds, so as to be a security to the plaintiff to that extent for any balance which might become due to him in the course of his dealings with York, or whether the security was limited to a single transaction between the plaintiff and York. It is obvious that we cannot decide that question upon the mere construction of the document itself, without looking at the surrounding circumstances to see what was the subject-matter which the parties had in their contempla-

tion when the guarantee was given. It is proper to ascertain that for the purpose of seeing what the parties were dealing about, not for the purpose of altering the terms of the guarantee by words of mouth passing at the time, but as part of the conduct of the parties, in order to determine what was the scope and object of the intended guarantee. Having done this it will be proper to turn to the language of the guarantee, to see if that language is capable of being construed so as to carry into effect that which appears to have been the real intention of both parties." And the court held it to be a continuing guaranty.

In *Field* v. *Munson* (47 N. Y., 221), Judge Allen said: "The transaction, as evidenced by the written communications between the parties, was not entirely intelligible, and the situation and relation of the parties toward each other, and the circumstances attending the negotiation and sale of the starch, were competent." In *French* v. *Carhart* (1 N. Y., 96), JEWETT, Ch. J., said: "Too much regard is not to be had to the proper and exact signification of words and sentences, so as to prevent the simple intention of the parties from taking effect. And whenever the language used is susceptible of more than one interpretation, the courts will look at the surrounding circumstances existing when the contract was entered into, the situation of the parties, and of the subject-matter of the instrument. To this extent, at least, the well-settled rule is, that extraneous evidence is admissible to aid in the construction of written contracts."

The principle of the admission of this class of evidence is, that the court may be placed in regard to the surrounding circumstances as nearly as possible in the situation of the party whose written language is to be interpreted; the question being, what did the person thus circumstanced mean by the language he has employed? Within this principle all prior conversation between the parties is not excluded. Such conversation may pertain to and explain the surrounding circumstances, may be part of some *res gestæ*, or may point out the subject-matter of the contract, and then it may be admis-

sible in evidence.    But this principle does not authorize parol evidence of the language of the parties contradicting, varying or adding to that which is contained in the written instrument or parol evidence of prior or contemporaneous declarations showing a different intention from that expressed in the instrument.    If after the resort to all the evidence admissible within this principle, the court cannot, from the language used, ascertain the meaning and intention of the party to an instrument, then it is a case of incurable and hopeless uncertainty, and the instrument must be held inoperative and void.

Now what facts have we here to enable us to construe this instrument ?    The letter was addressed to the cashier of a bank, requesting him to discount for Mr. Cummer to the extent of $4,000, and promising to be responsible for the same.    This would be quite an unusual instrument to give to a bank for a discount for a single sum or up to a single limit.    If such had been the intention, the more obvious method would have been for the defendant to have secured the paper to be discounted by placing his name thereon. Cummer was carrying on a continuous business in Buffalo and was doing his banking business with the plaintiff.    He needed in his business discounts from time to time, and was not a man of pecuniary responsibility.    The defendant was his father-in-law, residing in Canada, and desired to aid him. He was so situated that he could not be present at all times to indorse his paper.    Cummer had a line of discounts with plaintiff from $1,000 to $6,000 and desired to continue it. Plaintiff wanted more security and defendant went with Cummer to plaintiff, and there, knowing the relations between the plaintiff and Cummer, and the mode in which they conducted their business, expressed a willingness to aid Cummer, and agreed to give this paper.    It is clear that what Cummer needed, and what defendant wanted him to have, was a continuous credit at the bank to the extent of $4,000.    A single credit or a credit limited to that amount would have been of but little service to him.    Without more he could not have continued his business.    Viewed in the light of all

these circumstances, which were undisputed, we must conclude that the letter was intended as a continuing guaranty, and the court could properly have held so as matter of law. As to the construction of the letter there was nothing to submit to the jury. It may be that some parol evidence of the language used by the defendant and of his intention was received which was inadmissible, but it was harmless to the defendant, as the construction of the letter must have been the same without such evidence.

Precedents do not help much in the construction of such instruments. The dividing line between those which are limited and those which are continuous is not always plainly seen, and cases apparently quite similar are sometimes found upon one side of it, and sometimes upon the other. Where there is uncertainty upon the face of the instrument, its construction must necessarily depend upon the circumstances which throw light upon it, and hence the diversity. In *Gates* v. *McKee* (13 N. Y., 232), the following instrument, signed by the defendant, was held a continuing guaranty :

" Mr. Gates, Sir — I will be responsible for what stock M. E. McKee has had or may want hereafter to the amount of $500." And it was there said that these instruments are to be liberally interpreted so as to protect persons who give credit on the faith of them. In *Bastow* v. *Bennett* (3 Camp., 220) there was the following instrument : " I hereby undertake and engage to be answerable to the extent of £300 for any tallow or soap supplied by Mr. Bastow to France& Bennett, provided they shall neglect to pay in due time." In *Hargreave* v. *Smee* (6 Bingham, 244) the following : " I do hereby agree to guarantee the payment of goods to be delivered in umbrellas and parasols to J. & E. A. S., according to the custom of their trading with you, in the sum of £200." In *Mason* v. *Pritchard* (12 East, 227) there was a guaranty by the defendant to the plaintiff " for any goods he hath or may supply W. P. with to the amount of £100." In *Merle* v. *Wells* (2 Camp., 413) the guaranty was "for any debt W. W. may contract with the defendant in his business as a

jeweler not exceeding £100;" and these instruments were all held to be continuing guaranties. It cannot, therefore, be said that we run counter to the precedents in holding the letter now before us to be a continuing guaranty.

2. It is contended by the defendant that the paper to be discounted upon the faith of the letter of credit was to be customers' paper, and that this paper was not of that character. The request to discount was general. The bank might discount Cummer's own notes or drafts, or any paper which he brought to it. Such had been, to the knowledge of the defendant, the prior dealings between the bank and Cummer. The letter also contained an assurance that Cummer would give customers paper as collateral. This was not inserted in the letter as a condition or limitation upon the right to discount, or for the purpose of securing any benefit or protection to the defendant, or of limiting or defining the character of the paper to be discounted. It was simply an assurance that the bank should have not only the guaranty of the defendant, but also customers' paper as collateral to any discounts it might make.

3. It matters not that there was some change in the business conducted by Cummer after the date of the letter of credit and before these drafts were discounted, and that plaintiff had notice of such change. The change, so far as concerned Cummer, was not very substantial. He continued to carry on the same business, and, so far as appears, in substantially the same way. The letter of credit was not confined to any particular business. The bank was not bound to inquire or to know how the money it loaned to Cummer was to be used. He needed the line of discount just as much after the change as before, and we have no reason to infer that the defendant was, after the change, unwilling to continue his guaranty, or that he intended it should continue only so long as Cummer conducted his business just as he did when the guaranty was given. His agreement was general, to be responsible for discounts made for Cummer, and upon this the bank had the right

to rely until, by some adequate notice, he terminated his responsibility.

The judgment, therefore, is right and must be affirmed, with costs.

All concur, except M<small>ILLER</small>, J., absent.

Judgment affirmed.