WAIT *et al. v.* BORNE *et al.*

*(Supreme Court, General Term, Fifth Department.* February 7, 1889.)

1. SALE—WARRANTY—POWER OF AGENT.

The purchaser of an article made by a new process to be used in manufacturing as a substitute for a similar article made in a different manner, has a right to assume that a traveling agent of the maker, with general power to sell by sample, has authority to warrant the quality of the article, there being a usual and reasonable custom of the trade, when introducing such goods, to authorize the salesman to warrant them.

2. SAME—CONTINUING WARRANTY.

Under such circumstances, the customers having on the faith of the warranty ordered a quantity of the goods, with which they were entirely unfamiliar, and the fitness of which could be ascertained only by use, saying that if it was satisfactory they would order more, the warranty is a continuing one, and will extend to subsequent orders made before the defect was discovered.

Appeal from circuit court, Cayuga county.

The action was brought by William Wait and others against John E. Borne and others, to recover damages for an alleged breach of warranty on the sale by the defendants to the plaintiffs of a quantity of oil manufactured by the former and known as "Breton Oil." The plaintiffs are manufacturers of carpets in the city of Auburn, and, as the evidence shows, were doing an extensive business. The oil in question was used by them in the process of manufacturing carpets, and took the place of an article they were then using known in the trade as "Elaine Oil," which was not manufactured by the defendants. The sale to plaintiffs was made by one S. E. Tucker, a traveling agent or salesman of the defendants, who called upon the plaintiffs at their factory with a sample of the oil, and solicited an order from them. The plaintiffs claim, and give evidence tending to prove, that in order to induce them to purchase and use the oil in their works, Tucker represented to them that he was engaged in introducing a new wool oil manufactured by a secret process known only to the defendants, which they would guaranty equal to any animal wool oil; that it would go as far, and remain as long on the wool, and scour out more easily; that he had been studying on the subject for years, and as the result of his labors had discovered a way to saponify mineral oil, and that an oil which would saponify would scour out easily; and that he would guaranty that this oil would do this, and not injure the goods upon which it was used. The plaintiff thereupon ordered a barrel of the oil of Tucker, and said if it worked well they would order more. This was in February, 1884, and on the 4th of March following the oil was shipped from defendant's factory in New York. Afterwards, and on the 8th April, five barrels more were shipped to the plaintiffs upon their order, and on the 7th May following five additional barrels, all of which were used by the plaintiffs within the period of about two months, during which time they manufactured some eighty or ninety thousand yards of carpet from wool to which this oil was applied. In the process of manufacture, oil of this description is applied to the wool before the same is carded and spun, for the purpose of reducing the electricity in the wool, and to make it pliable in the process to which it is subjected. It becomes necessary thereafter to remove the oil thus applied, and it is customary to eliminate the same after carding and spinning the wool, and before it is woven into carpets. This is accomplished by scouring; and evidence was given to show that proper skill was employed in using and endeavoring to remove the oil, but that, instead of answering the description and representations of defendants' agent, the oil remained in the wool, in consequence of which all the carpets in the manufacture of which this oil was used were more or less injured, and plaintiffs were damaged in an amount equal to the verdict. Proof was also given tending to establish the fact that it is the custom for the manufacturer of compounded oils to authorize his

agent to guaranty the same when introducing them to the public. Verdict for plaintiffs, which was set aside, and plaintiffs appeal. A former decision is reported in 43 Hun, 639, *mem.*

Argued before BARKER, P. J., and DWIGHT and ADAMS, JJ.

*W. F. Cogswell,* for appellants. *C. W. West,* for respondents.

ADAMS, J. It was earnestly contended by the learned counsel for the appellants, upon the argument of this case, that the recovery herein might be upheld upon the theory of an implied warranty; and, while we do not wish to be understood as holding that the complaint does not contain all the elements of a good pleading upon such a cause of action, it must nevertheless be conceded, we think, that the case was tried and submitted to the jury upon an entirely different theory, viz., that of an express warranty accompanying the sale of the oil to defendants; and the important question, therefore, which is presented for our consideration is whether or not the agent, Tucker, had authority to make such a warranty, or, to state it more correctly, had the plaintiffs any right to assume that he was invested with such authority? Upon the decision of this case when first before this court (7 N. Y. St. Rep. 113, 43 Hun, 639, *mem.*) it was held that an agent employed to do a particular act is authorized to do it only in the usual and customary way of business, which usage or custom furnishes the rule by which his authority is to be measured, and that consequently a general selling agent, with authority to sell on credit, may warrant the soundness or quality of the article sold when such is the usage of trade. No evidence of any such usage or custom was furnished by the plaintiffs upon the first trial, and for that reason, with others, a new trial was granted. This difficulty appears to have been obviated upon the second trial, however, and considerable testimony was given by either party tending to prove or disprove the existence of such a custom. The evidence thus furnished was conflicting, and quite contradictory in its character, it is true, and yet we cannot say that it was not sufficient to warrant the conclusion reached by the jury, which establishes as facts in the case that the warranty was made, that it was authorized by the usage or custom of trade, and that such custom or usage was a reasonable one. The defendants' evidence tends to prove that the warranty thus made by their agent was not only without authority, but was in direct violation of their express instructions to him when he started out upon his mission of introducing their oil into general use. Whether or not such was the fact is, however, of little consequence, inasmuch as it is not claimed that these instructions ever came to the knowledge of the plaintiffs; and, in the absence of such knowledge on their part, they insist that they were justified in dealing with the agent upon the assumption that he was authorized to make the warranty relied upon. The general rule is that an agent is authorized to do whatever is usual and customary to carry out the object of his agency, and it is for the jury to say what is usual under the circumstances of a given case. If in the sale of goods confided to him it is the custom of the trade to give a warranty, the agent may give the warranty. Benj. Sales, § 624, and cases cited. Moreover, the purchaser, while bound to take notice of any departure from the usage of trade by an agent, is presumed to understand the benefits conferred, as well as the limitations imposed, by any particular usage, and to contract with reference to them in making a purchase. *Easton* v. *Clark,* 35 N. Y. 225–232. It follows, therefore, that in making the purchase of the oil in question, plaintiffs, being aware of what was customary under the circumstances, had the right to rely upon the authority which usage conferred upon the defendants' agent to make the representations he did concerning the quality of the oil sold. It is perhaps unnecessary to consider further this branch of the case, but it occurs to us there is yet another reason why plaintiffs had the right to act upon the assumption that defendants' agent was authorized to give a warranty.

The oil sold was manufactured by the defendants by a process which was. known only to them. Furthermore, it was manufactured and designed to be-used for a particular purpose, and these circumstances created an implied war-ranty on their part that it was not only free from any latent defect resulting from the process of manufacture, but also that it was fit and proper for the pur-pose for which it was designed and purchased. *Hoe* v. *Sanborn*, 21 N. Y. 552;. *Van Wyck* v. *Allen*, 69 N. Y. 61. This proposition leads almost necessarily to the conclusion that if defendants might have relied upon an implied war-ranty respecting the quality of the oil purchased they had an equal right to rely upon the authority of the agent, as an incident to his agency, to express in words that which the law implies. *White* v. *Miller*, 71 N. Y. 118, 130, 131; *Nelson* v. *Cowing*, 6 Hill, 336.

In addition to the questions thus far considered, the jury were permitted to find whether the warranty given by defendants' agent extended to all the oil purchased by the plaintiffs, or was limited to the first barrel sold. Their ver-dict justifies the conclusion that they found the warranty to be a continuing one, and it was for the supposed error arising from the submission of this question that a new trial was granted. A careful examination of the evi-dence, as well as of the reasons advanced in the opinion of the learned trial. justice, fails to convince us, however, that any error was committed in the-disposition made of this question at the circuit. A warranty should be con-strued in conformity with the rule governing the construction of contracts. generally, *i. e.*, so as to accord with the apparent intention of the parties; and; where the language is ambiguous the surrounding circumstances may be-looked at to ascertain the intention of the parties. *Bank* v. *Kaufmann*, 93. N. Y. 273, 281. The language of the warranty in this case was general. It was applied to the article sold, and not to any lot or portion thereof. Indeed, at the time the warranty was given no particular quantity had been spoken of. The defendants' agent had called upon plaintiffs for the express purpose of introducing a new kind of oil which had never before been used by them, and, in order to induce them to purchase and use it, he said he would "guar-anty the oil to be equal to any oil in the market;" that he would guaranty plaintiffs "from any trouble from its use;" that "he would guaranty the use of this oil in our [defendants'] factory;" that it would not injure their goods, and that he would guaranty defendants from any damage to their goods aris-ing from its use; and finally he added: "This oil will scour easier than ani-mal oil; but you use it on your wool and in your scouring process as you have Elaine, and you will be doubly sure, and we will guaranty it as we have-talked if you use it in this way." The defendants thereupon ordered a bar-rel, and said if it worked well they would order more. Thereafter, and be-fore discovering any defect in the oil, two additional lots were ordered. These are substantially the terms of the contract, as testified to by plaintiffs' wit-nesses, and, viewed in the light of surrounding circumstances, we are of the-opinion that they must be held to have constituted a continuing warranty that all the oil purchased by the plaintiffs upon the faith and in consequence of these representations of the agent should prove satisfactory and "work well;" or, in other words, that the plaintiffs, when they ordered one barrel, and said if "it" worked well they would order more, had reference, not to the contents. of that particular barrel, but to all the oil purchased and used by them prior to the application of a satisfactory test of its quality. Had they ascertained. the result of such a test immediately upon using the quantity first ordered it is quite possible that the contract of warranty would then have terminated.. But such was not the case. On the contrary, the evidence tends to show that they were unaware of any breach of the contract until all the oil ordered by them had been used in the manufacture of carpets as they had been directed to use it by defendants' agent. This view of the question would have made-it proper for the trial court to have disposed of it as one of law, rather than

of fact, and consequently to have withheld it from the consideration of the jury. *Rindge* v. *Johnson*, 24 N. Y. 64; *Bank* v. *Myles*, 73 N. Y. 335. It may, perhaps, be argued that, inasmuch as the meaning and effect of the language employed by the agent, and which constituted the contract of warranty, have been construed differently by different tribunals, and by the same tribunal on different occasions, it is sufficiently ambiguous, or so far susceptible to different constructions, as to have made it necessary to submit the question, as one of fact, to the jury. That it was thus disposed of furnished no ground for complaint to the defendants, however, as the charge was more favorable to them than they were entitled to claim.

No error appears to have been committed in the rule of damage stated to the jury as applicable to this case. *Passinger* v. *Thorburn*, 34 N. Y. 634; *Milburn* v. *Belloni*, 39 N. Y. 53; *Borradaile* v. *Brunton*, 8 Taunt. 535; *White* v. *Miller*, *supra*. Nor did the fact that a bill of particulars had been furnished change the rule in any respect. It doubtless served to limit plaintiffs' recovery to the items and amounts specified in the bill, and we are unable to discover that the verdict is in excess of the amount thus authorized. The evidence of the plaintiff Wait, of which counsel complains, does not appear to have furnished the basis upon which the verdict was rendered. The views thus expressed lead to a reversal of the order granting a new trial, and a direction of judgment for the plaintiffs upon the verdict. All concur.