JOHN MOORE AND PATRICK LYNCH, RESPONDENTS, v. LEWIS C. KING AND EUGENE F. KING, APPELLANTS.

*Warranty on a sale of goods — when applicable to subsequent sales.*

Goods were purchased, under date of October 4, 1885, with an agreement on the part of the seller that he would warrant the article to be as had been represented. Subsequently, on April 26, 1886, the purchaser ordered a further amount of the goods, "same as you sent us on October 4, 1885;" and subsequently, on June 9, 1886, he ordered a further supply of the same articles as follows: "White shellac same as sent on May 8, 1886."

*Held*, that the warranty given upon the first sale applied to the article purchased on June 9, 1886.

APPEAL by the defendants from a judgment, entered in the office of the clerk of the county of Onondaga on the 22d day of June, 1889, in favor of the plaintiffs, after a trial before a referee, by whom a judgment was directed against the defendants for the sum of $700.

*L. A. Gould*, for the appellants.

*Thomas Hogan*, for the respondents.

MERWIN, J.:

The plaintiffs in 1885 and 1886 were engaged at Syracuse in the manufacture and sale of picture frames, moldings and ornamental

woods, and the defendants were engaged in New York city in the manufacture and sale of varnishes, shellac and painters' materials. · In the latter part of September or 1st of October, 1885, one Snyder, a selling agent of the defendants, called on the plaintiffs for the purpose of soliciting their trade. As to this interview the referee finds as follows: Snyder "stated to them that the defendants had an article of· shellac varnish equal, if not superior, to anything in the market; that they would find it to their advantage to use it; that it had a better body than anything that was in the market at that time; that it would dry., and was very quick in hardening; and that if the plaintiffs would patronize the defendants they would warrant the article to be as had been represented, and that they would warrant all goods sold in the future to be as had been represented; that the plaintiffs suggested that a sample of the shellac varnish of the defendant be sent, and gave an order to the defendants for a ten-gallon cask of shellac varnish, which order was received by them and known to be a sample order, which was, on or about the 4th day of October 1885, delivered to the plaintiffs; that said Frank Snyder also stated that the defendants would warrant all goods purchased of them by the plaintiffs in the future to be equal to said sample cask; that the plaintiffs stated to said Frank Snyder that the shellac varnish would be used by them upon moldings, and said Frank Snyder stated that the shellac varnish of the defendants was suitable for that purpose."

The referee further finds that Snyder was expressly authorized by the defendants to warrant the article of shellac varnish sold by them to be made from fine gum shellac and wood alcohol, and that it was the usage of the business of the defendants for a selling agent to warrant the quality of the article sold.

On the 26th of April, 1886, the plaintiffs ordered of defendants one barrel of pure white shellac varnish, "same as you sent us October 4, 1885," reference being made to the sample cask delivered at that date, and thereupon a barrel of such varnish was delivered by defendants to plaintiffs on the 8th of May, 1886. This barrel and the sample cask were used in the business of plaintiffs and applied· to moldings and corresponded to the warranties in every respect, and were made from pure shellac gum and pure wood alcohol. ·

On the 9th of June, 1886, the plaintiffs, relying as the referee finds,

on said warranties, ordered of the defendants a second barrel "white shellac, same as sent on May 8, '86," reference being made to the barrel delivered at that date, and thereupon, on the 17th of June, 1886, the defendants delivered to plaintiffs a barrel of shellac varnish purporting to be the same. This is the barrel of varnish in controversy.

The referee finds that about one-half of it was properly applied and used in the business of plaintiffs upon 20,000 feet of mold_ings; that it did not contain an article made from pure gum shellac and pure wood alcohol, and contained an article which did not dry or harden, and was not suitable for application upon moldings; and which became soft, sticky and gummy after application upon said moldings; that the moldings would have been worth ten cents a foot if the article applied thereupon had been made from pure gum shellac and pure wood alcohol, and had been suitable for the purpose of finishing moldings; that 14,000 feet of the 20,000 were of the value of five cents per foot; that the article in the barrel in question had no visible defect, and appeared in all respects similar to and identical in quality with the previous barrel; and that no defect could have been discovered from an examination of the same, or until some time after its application to the moldings; that by reason of the failure of the article to correspond with the warranties, the plaintiffs were damaged in the sum of $700, for which judgment was ordered.

It is claimed, on the part of the defendants, first, that the sale of the goods in question was without warranty and, secondly, that the findings setting forth defects are against the weight of evidence. The main argument as to the first proposition is based on the circumstance, that at the time of that particular sale no representation was made by the defendants, and that what occurred at the first sale did not apply to the last. There was conflicting evidence as to what occurred on the occasion of the first or sample order, and the finding of the referee on that subject must be assumed to be correct. That being so, it is very clear that the parties contemplated future orders, and that whatever was then said as to the quality or adaptability of the goods was intended and understood to apply to subsequent sales. So that when the plaintiffs on the second occasion ordered goods the same as the first, and upon the last occasion ordered goods

the same as the second, there was no room for defendants to doubt as to what was ordered; and when they filled the order they must be presumed to have done so under the arrangement as first made and as a part of that transaction, and whatever representations were then made must be deemed to apply. (*Wait* v. *Boone*, 23 N. Y. St. Rep., 341.) They knew the first was a sample order. There is no doubt about the authority of the agent to make the warranty. An agent authorized to sell property, in the absence of any express limitation of his power, is authorized to do any act or to make any declaration in regard to the property found necessary to make a sale and usually incidental thereto. (*Ahern* v. *Goodspeed*, 72 N. Y., 108; *Mayer* v. *Dean*, 115 id., 560.)

The warranty, we think, was sufficiently established. Was there a breach shown? A large amount of evidence on this subject was presented by each party. On the part of plaintiffs it was shown that, after the application of the varnish to moldings, unsatisfactory results were developed. The vital question was whether these results were attributable to a poor quality of shellac. In determining this question, the reliability of the witnesses upon either side was, to a certain extent, involved. Inferences were to be drawn and this was peculiarly within the province of the court below. It is argued that it was incumbent on the plaintiffs to show that all of the moldings upon which this varnish was applied showed defective results. The finding of the referee is that, as to 6,000 feet, such results were not shown. It is not found that they were not defective, but that they were not shown to be so. There is evidence that that 6,000 feet had been sold by plaintiffs, and claims for damages in some instances made, but no proof sufficient to satisfy the referee of the condition or value, in fact, of such moldings. No damages were allowed on that amount. The apparent inability of the plaintiffs to show the condition of this amount of the moldings should not bar their claim. If there was any ground to believe that such part was not defective, though treated the same as the rest, it might be troublesome to plaintiffs' theory. This, however, is not shown or found. The finding of the referee on this subject should not be disturbed.

No point is made by the defendants as to any ruling upon evidence. As to damages, they claim that they are excessive and that

the measure is erroneous. In support of this, the only statement in defendants' points is that it sufficiently appears from the plaintiffs' verified bill of particulars which was offered in evidence. The record shows that after this bill was offered, and after the plaintiffs rested their case, they were allowed, upon terms which were complied with, to amend the complaint to conform to the proof. This being so, the bill of particulars, served a long time before, ceased to limit the recovery. The question, then, is whether the proof sustains the findings as to damages.

It was shown by the plaintiffs that the moldings would have been worth ten cents per foot if the article applied thereon had been as warranted, but were, in fact, worth only five cents per foot. This evidence was not objected to as not furnishing the proper measure of damages, but objection was made on other grounds which were properly overruled. It seems to have been assumed that that was the proper measure. (*Parks* v. *Morris Ax and Tool Co.*, 54 N. Y., 586.) No evidence was given by the defendants to contradict this valuation, and no request was made for finding on that subject. It was shown by plaintiffs that the difference of five cents would be the expense of taking off the old finish and putting on the new, so that this difference represents the actual damages.

The defendants knew the purpose for which the varnish was to be applied and represented it suitable, and it is found, upon sufficient evidence, that the defect could not have been discovered before it was applied. As the case stands, we think the finding as to damages must be sustained and the judgment affirmed, with costs.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.