### SELF v. ALBANY NAT. BANK OF ALBANY. (No. 8390.)*

(Court of Civil Appeals of Texas. Ft. Worth. June 3, 1916. Rehearing Denied June 24, 1916.)

1. GUARANTY ⚖══36(3) — CONSTRUCTION — SCOPE OF LIABILITY—GUARANTY OF DRAFT.

Where one Strong checked on defendant banker in favor of Williams, who indorsed the check to plaintiff, *held* that defendant was liable for the amount under a letter to plaintiff, promising to take care of Williams' drafts on Strong up to $1,800.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 39; Dec. Dig. ⚖══36(3).]

2. EVIDENCE ⚖══461(1)—SURROUNDING CIRCUMSTANCES—PAROL EVIDENCE.

Parol evidence of surrounding circumstances is admissible in determining whether a written guaranty is continuing or affects merely a single credit.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2129; Dec. Dig. ⚖══461(1).]

3. GUARANTY ⚖══38(1)—CONSTRUCTION—CONTINUING GUARANTY.

A banker's letter that he would take care of one Williams' drafts on Strong up to $1,800 *held* to be a continuing guaranty, where he had financed Strong's business for several years.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 47; Dec. Dig. ⚖══38(1).]

Appeal from District Court, Erath County; W. J. Oxford, Judge.

Action by Albany National Bank of Albany, Texas, against A. L. Self and others. Judgment for plaintiff, and defendant Self appeals. Affirmed.

E. E. Solomon, of Dublin, and Speer & Brown, of Ft. Worth, for appellant. A. A. Clarke and Walter L. Morris, both of Albany, for appellee.

BUCK, J. The Albany National Bank sued W. E. Williams and C. H. Strong, doing business under the trade-name of Dublin Produce Company, and A. L. Self, doing

business under the trade-name of Farmers' Exchange Bank of Dublin (unincorporated), to recover the sum of $1,673.32, represented by a check drawn by Strong in favor of Williams, upon the Farmers' Exchange Bank of Dublin, which check was indorsed by Williams, and upon presentation was cashed by plaintiff bank. Upon the check's presentation to the Dublin bank payment was refused. Thereupon suit was filed against the defendants named at Albany, but upon Self's plea of privilege, the cause was transferred to the district court of Erath county. Upon a trial before the court, the jury having been waived, judgment was rendered for plaintiff bank against all of the defendants, jointly and severally, in the sum of $1,736.74, including $63.42 interest. Judgment was also rendered in favor of W. E. Williams, as an indorser, against Self and Strong, jointly and severally, for whatsoever sum he might be compelled to pay under this judgment. Self alone appeals.

Plaintiff pleaded, upon information and belief, a certain agreement, arrangement, and course of business, between the defendant Strong and the defendant Self, originating as early as the first part of the year 1913, and continuing up to the occurrence of the transactions upon which this suit was predicated; that Self would pay all checks that Strong, or the Dublin Produce Company would draw against him, or the Farmers' Exchange Bank of Dublin, in the course of the former's business as a dealer in the buying and selling of poultry, eggs, and other like products, and that this agreement and understanding between Strong and Self was generally and publicly known, and that Self held himself out to the public as willing and able to cash all such checks as the said Strong should find it necessary to draw in the usual and ordinary conduct of his said business; that Strong, being a man of small means and no property subject to execution, would not have been able to carry on his said business and to obtain the credit necessary without this arrangement and understanding that he should have such credit with the defendant Self and his bank; that Williams also was a man of small means and no property subject to execution, and that in cashing the check presented to plaintiff bank by Williams, the plaintiff did so, relying, not upon the financial responsibility of Williams or of Strong, but upon the promise and agreement of Self to pay such checks as Strong should draw in the course and conduct of his business, and upon the special promise to the plaintiff bank on the part of Self, as hereinafter set out; that on or about January 14, 1914, plaintiff bank wrote a letter to the Farmers' Exchange Bank of Dublin, the trade-name under which Self was doing business, asking if checks of the Dublin Produce Company or the drafts of the defendant Williams drawn on said produce company, would be honored by Self, or said Farmers' Exchange Bank, and that in reply thereto Self wrote the following letter to W. G. Webb, cashier of the plaintiff bank, to wit:

"The Farmers' Exchange Bank of Dublin
(Unincorporated) Dublin, Texas.
"January 14, 1914.
"Mr. W. G. Webb, Cash., Albany, Tex.—Dear Sir: Replying to yours of even date, herewith, beg to say that we will take care of Mr. W. E. Williams' chicken drafts on Dublin Produce Company up to eighteen hundred dollars.
"Respectfully, [Signed] A. L. Self,
"President."

Relying upon the promise contained in said letter, plaintiff was led to believe, and did believe, that the defendant Self would pay all such debts as the defendant Strong, acting under the said trade-name, might incur with the defendant Williams up to the sum mentioned; that said letter and the authority therein given, and the promise therein made, were never at any time recalled, revoked, or canceled by said Self until the dishonor of the check for the sum of $1,673.32, which check was dated November 25, 1914, and payment thereon refused some days thereafter. Plaintiff pleaded that defendant Self was estopped from denying his liability because of the facts pleaded in plaintiff's petition.

Defendant Self answered by general demurrer and general denial, and further specially demurred to plaintiff's petition because it did not allege the acceptance of said check by the defendant Self or his bank. He further denied that he had, either verbally or in writing, ever agreed with C. H. Strong, or made any contract with said Strong, as an inducement for the said Strong to continue in business with him or his bank, to pay any and all checks that might be drawn by said Strong in the course of the latter's business, but set out in his answer a copy of a certain mortgage lien contract made by said Dublin Produce Company, or said Strong, in favor of defendant Self, dated November 19, 1914, which was, in effect, a mortgage given by Strong, or the said Dublin Produce Company, to the said Farmers' Exchange Bank, on certain tools, coops, pens, fixtures, turkeys, chickens, eggs, etc., then owned and held by said Strong, and on any other such property that might be acquired by said Strong during the continuance and operation of said mortgage, to secure to said Farmers' Exchange Bank the payment of a certain note for $465, due December 1, 1914, and signed by said Strong under his said trade-name, and to secure the payment of any other indebtedness which might be thereafter owing by said Strong or the Dublin Produce Company to said Self or his bank.

[1-3] But if the conclusions we have reached upon the issues presented are correct, it will not be necessary for us to further consider or discuss the nature and effect of this mortgage given by Strong to the defend-

ant Self and his bank, for said letter was a specific promise on the part of the defendant Self to honor and pay "W. E. Williams' chicken drafts on the Dublin Produce Company up to eighteen hundred dollars." There is no defensive plea that this promise had ever been withdrawn, nor is there any evidence to such effect. Therefore we have concluded that the plaintiff bank, in cashing the check of W. E. Williams to the amount of $1,673.32, had the right to rely on the written promise of defendant Self that such check would be paid. We are further of the opinion that the trial court was justified from the evidence in concluding, as he did and as in effect expressed in his fourteenth finding, that the letter of January 4th to the cashier of plaintiff bank constituted a continuing guaranty. Baylies on Sureties and Guarantors (1881) p. 124, uses this language:

"The line of distinction between continuing and noncontinuing guaranties cannot always be drawn with precision or accuracy; and in construing such contracts the courts look well to the object for obtaining the credit and the intent of the parties, as evidenced by the language of the guaranty and the surrounding circumstances. Parol evidence of surrounding circumstances is always admissible to aid in determining the question whether the obligation in dispute was intended as a continuing guaranty, or as a guaranty of a single credit, if the language of the instrument itself is ambiguous" (citing Bank of Buffalo v. Myles, 73 N. Y. 335, 29 Am. Rep. 157).

In the case cited by the author, the court said that where the intent cannot be ascertained by a mere perusal of the letter of credit, a resort may be had to the surrounding circumstances, the nature of the business in which the credit was to be used, the situation and relation of all the parties and their previous dealings, and the negotiations which led to the giving of the letter, to enable the court to ascertain what was meant by the letter. The terms of the letter cannot be changed by such evidence, and no additional language can be imported into it, but the evidence is proper to enable the court to understand the meaning of the language used. In the cited case, the plaintiff demanding more security, the debtor obtained from his father-in-law the following letter:

"Please discount for Mr. Cramer to the extent of four thousand dollars. He will give you customer's paper as collateral. You can also consider me as responsible to the bank for the same."

This was held to be a continuing guaranty. In 20 Cyc. p. 1440, it is stated:

"When the amount of the liability is limited and the time is not expressly limited, the courts lean toward construing the guaranty as a continuing one" (citing Mathews v. Phelps, 61 Mich. 327, 28 N. W. 108, 1 Am. St. Rep. 581; Kimball Co. v. Baker, 62 Wis. 526, 22 N. W. 730).

"The liability under the guaranty will be regarded as continuing when by the terms of the contract it is evident that the object is to give a standing credit to the principal debtor to be used from time to time either indefinitely or until a certain period. So a guaranty may be construed as continuing where attendant circumstances strongly indicate that more than a single transaction was contemplated, especially if the right to recall the guaranty is expressly reserved. The use of the word 'may' with reference to the proposed transactions between the principal parties is held usually to indicate a continuing guaranty. So words guarantying payment for 'any goods' which may be purchased by the third person; or the payment of 'any debt' which may be contracted, up to a certain amount, are almost invariably held to indicate that the liability is intended to be continuing."

The evident conclusion of the trial court that Self, himself, so regarded the guaranty made in the letter to the plaintiff bank is supported by the fact that on November 19, 1914, only six days before the giving of the check by Strong to Williams, the nonpayment of which is the subject of this controversy, the chattel mortgage heretofore mentioned was given by Strong to defendant Self; that a line of credit had been extended by Self to Strong for a period of some three years prior to this, during which checks and drafts aggregating many thousands of dollars were drawn by Strong on the defendant Self and cashed by the latter, in many instances such checks causing an overdraft, but Self charging Strong 10 per cent. interest on such overdrafts. It is further shown by the testimony of Williams, as well as other witnesses, that the transactions between him and Strong began back in 1912 or 1913, Strong purchasing from Williams turkeys, chickens, and other products and paying him therefor in checks and drafts drawn on the Farmers' Exchange Bank, said shipments amounting in one instance to $2,500, and all of these checks were honored by Self's bank, except the one in dispute; one check for $81.27 being drawn by Strong in part payment to Williams for the carload of turkeys for which the check in controversy was given, was also paid by Self's bank. The cashier of the plaintiff bank testified that he would not have paid the check except for the letter from Self heretofore mentioned, and because of the fact that the checks drawn by Strong and made payable to Williams and deposited in the Albany bank had been theretofore honored by defendant Self's bank. It is further in evidence that transactions of this character were conducted between the defendant Strong and the defendant Self for several months subsequent to the giving of the check in controversy, and that at the time of the trial Strong had paid Self the full amount of any overdrafts made. Hence we are of the opinion that, in view of the evidence stated and other evidence of similar import, the trial court did not err in holding appellant liable for the amount of the check in controversy with legal interest thereon. We hereby adopt the court's findings of fact.

We think what we have hereinabove said disposes of the questions presented in all of appellant's seven assignments, and said as-

signments are overruled, and the judgment of the trial court is hereby, in all things, affirmed.