**PITTINGER et al. v. SOUTHWESTERN PAPER CO. OF FORT WORTH.**

No. 14246.

Court of Civil Appeals of Texas. Fort Worth.

May 23, 1941.

Frank A. Ogilvie, of Fort Worth, for appellants.

Ernest May and Glenn Smith, both of Fort Worth, for appellee.

SPEER, Justice.

Plaintiff Southwestern Paper Company of Fort Worth sued Sam H. Lane and John R. Pittinger and wife upon a note and account against Lane and a written guaranty by the Pittingers to the extent of $400.

It developed upon the trial that Lane had recently been adjudicated an involuntary bankrupt, but no discharge had been issued, and he was dismissed from the suit.

As between plaintiff and the Pittingers, trial was had to the court and judgment was entered for plaintiff for $400, from which judgment this appeal was perfected.

From the record, it appears that early in July, 1932, Sam H. Lane went into the printing business and desired to procure a line of credit from plaintiff to enable him to purchase supplies on open account, from time to time, in the pursuit of his business. He approached plaintiff's manager and endeavored to purchase his supplies on credit, but his request was denied. He was informed that if he would procure some one satisfactory to plaintiff who would guarantee payment of the account up to $400, the line of credit would be extended to him.

Lane arranged with his sister-in-law, Mrs. Pittinger, and her husband to make the guaranty. On July 11th, 1932, the Pittingers executed and delivered the guaranty, which reads: "Southwestern Paper Company, Fort Worth, Texas. Gentlemen: I hereby agree to personally guarantee payment of the Sam H. Lane account for the maximum amount of $400.00. Please notify me when the account reaches that amount and I will either see that payment is made by Sam H. Lane or will send you my personal check to cover. Yours very truly." Signed by Mr. and Mrs. Pittinger.

Plaintiff would extend no credit to Lane prior to the time it received the written instrument from the Pittingers, but upon receipt of the document Lane began purchasing supplies from plaintiff on open account and continued until in February, 1940. Lane's account exceeded $400 in August, 1932, and fluctuated in amounts throughout the entire period from 1932 to 1940. At one time Lane owed plaintiff $700 on the account. It exceeded $400 many times while the business relationship continued between plaintiff and Lane. In each instance, however, Lane would make payments and assign contracts with his customers to plaintiff in sufficient amounts to satisfy plaintiff, until early in 1940, when the account ran to $457.67, and Lane was unable to pay or to give additional security. Suit was instituted June 15th, 1940.

Defendants (the Pittingers) base their appeal upon the proposition that their guaranty of the Lane account was not a continuing one; that it ceased when Lane's account reached $400; that when plaintiff failed to notify them that the maximum amount of $400 had been reached, their

924

further obligation, under the guaranty, ceased. The single assignment of error relied upon by defendants reads: "Under the evidence and surrounding facts and circumstances, appellants (the Pittingers) are not liable in any respect, and the court erroneously rendered judgment against them." Counsel for the respective parties agree that whether or not the written guaranty of the account was a continuing one is the controlling point in this appeal.

It is admitted by defendants in their briefs that their obligation to guarantee the payment of the Lane account up to $400 was a continuing obligation until the first time the account reached the maximum amount; this occurred in August following the execution of the instrument. It is contended that when plaintiff failed to notify them of that fact, they were no longer liable under the guaranty. They say that, to ascertain the intention of the parties from a construction of the instrument, it was proper for the court to take into consideration all the surrounding facts and circumstances. That at the time of the execution of the guaranty by them, they knew Lane had no credit with the plaintiff and desired to establish a line of credit with plaintiff to enable him (Lane) to conduct his printing business; that for this purpose they were willing to guarantee the payment of Lane's account up to $400. They contend that since the guaranty contained the provision, "Please notify me when the account reaches that amount ($400) and I will either see that payment is made by Sam H. Lane or will send you my personal check to cover", and plaintiff did not comply with the request, they were no longer obligated by the instrument.

■ In the construction of a written instrument, the paramount issue is to determine the intentions of the parties; this is to be done from the language used, if such aid is thus afforded; but if it cannot be done in this way, then we must look to the surrounding facts and circumstances existing at the time the instrument was executed. 28 C.J. p. 957, § 108 et seq.

■ ■ Defendants contend that the phraseology of the guaranty is such as to clearly indicate that it was limited to payment of Lane's debt, not exceeding the amount named, during only such time as the whole debt did not exceed the amount guaranteed; and that the last part of the instrument had the effect of limiting the promise, conditioned that plaintiff would notify them when the whole indebtedness reached the maximum amount guaranteed. We cannot so construe the instrument. To paraphrase the guaranty, giving it the same meaning, the two parts pointed out by defendants would read: (1) If you (plaintiff) will grant to Lane a line of credit we will guarantee payment of the account up to the maximum amount of $400. And (2) if you will notify us when the account reaches that figure, we will either see that Lane pays it or will pay it ourselves. Webster's New International Dictionary gives the meaning of guaranty, substantially, as an undertaking by one to another to answer for the payment of some debt, incurred by a named person, in case of the failure of that person to pay. In 18 Words and Phrases, Perm.Ed., page 800, it is said that the word guaranty has a well defined legal meaning, and repeats substantially that given by Mr. Webster.

In Stewart, Gwynne & Co. v. Sharp County Bank, 71 Ark. 585, 76 S.W. 1064, 1065, the Supreme Court of Arkansas had before it a situation somewhat similar to the one before us. In that case, the bank wrote plaintiff: "This bill will be paid in fifteen days. Draw for amount at that time." Plaintiff did not draw on the bank promptly at the end of fifteen days, but did so later. The bank defended upon the ground that its promise to pay was conditioned upon the additional request to "draw for amount at that time" (at the end of fifteen days). The court held in effect that such a construction of the agreement as contended for by the bank could not be given to the promise to pay, but that the additional request to draw for the amount at the end of fifteen days meant only to emphasize the promise that the bill would be paid in fifteen days. In the case at bar, it will be observed that by the first subdivision made by us of the guaranty, defendants promised, unequivocally, to guarantee payment of Lane's credit account not to exceed $400. To this promise they added these words: "Please notify me when the account reaches that amount and I will either see that payment is made by Sam H. Lane or will send you my personal check to cover." Like in the Arkansas case cited, we think the last quoted provision is mainly a reiteration of the promise to pay, made by defendants in the first place, and tends only to emphasize their intention to do so, For the reasons indicated, we do not believe the intention of the parties to the written guaranty should be construed to mean that

defendants would guarantee the payment of Lane's line of credit not to exceed $400, provided plaintiff would notify them when the account reached that figure. Such a construction would be necessary if we sustained defendants' contention urged on this appeal.

■ The rule of law in this state, applicable to limited and continuing guaranties, seems to be that when a guaranty is fixed as to the amount and no time limit is named in which the obligation shall continue, such an instrument tends strongly to indicate that a continuing guaranty was contemplated. 21 Tex.Jur. p. 149, § 16.

■ We see nothing in the letter of guaranty from which we may definitely know whether the defendants intended that their obligation should be limited to the first $400 owing by Lane or should continue throughout the time that plaintiff should extend to him the "Line of credit". This being true, we must look to the facts and circumstances surrounding the whole transaction to find the intentions of the parties in this respect. In their briefs, defendants ask us to do this. It is a well recognized rule of construction.

In Self v. Albany National Bank, Tex. Civ.App., 187 S.W. 982, 984, writ refused, quoting from another jurisdiction with approval, it was said: "Where the intent [of the parties] cannot be ascertained by a mere perusal of the letter of credit, a resort may be had to the surrounding circumstances, the nature of the business in which the credit was to be used, the situation and relation of all the parties and their previous dealings, and the negotiations which led to the giving of the letter, to enable the court to ascertain what was meant by the letter."

Taking this rule as our guide, we find from the record that in 1932 Lane desired to go into the printing business; to do so he had to purchase paper and supplies to enable him to do printing for his customers; he had no funds with which to buy and of necessity had to procure a line of credit with some concern like plaintiff to furnish supplies on open account, until he could finish a contract of printing, deliver it to his customer and collect money with which to pay his supply bills. Lane tried to arrange for credit with plaintiff and failed, until he was told that a line of credit would be given him if he would procure a suitable guaranty of the account up to $400. Lane went to Mrs. Pittinger, his sister-in-law, one of the defendants and re-

lated to her the facts. It is admitted by defendants in their briefs that they well knew the facts and circumstances involved. Mrs. Pittinger and her husband signed the written guaranty hereinabove quoted, and upon which this suit is based. It is obvious to us that defendants desired to assist Lane in establishing a line of credit with plaintiff, by which he could engage in and pursue the printing business. Defendants must have known that the establishment of a line of credit for the purposes mentioned did not mean the purchase of $400 worth of paper and then to discontinue the credit which meant the life of Lane's business. The line of credit which defendants established for Lane, although limited by the guaranty to $400, enabled Lane to purchase as high as $700 in materials, while before the guaranty he could not purchase any amount upon his own name. Defendants therefore knew that by their act they were aiding Lane in establishing a line of credit with plaintiff; this would not have been accomplished by a single purchase of $400 worth of materials.

In the mercantile world, the expression "line of credit" has a well defined meaning. It signifies a margin of credit by one to another to the extent agreed upon. It most frequently covers a series of transactions, in which case, when the customer's line of credit is nearly exhausted, he is expected to reduce his indebtedness by payments before making additional purchases. 37 C.J. p. 1261.

In Schneider-Davis Co. v. Hart et al., 23 Tex.Civ.App. 529, 57 S.W. 903, the court gave substantially the same definition of the term "line of credit" as that above announced in Corpus Juris. In that case, a somewhat similar guaranty of another's debts was made to that in the instant one. There, the court held that a guaranty of the account of a debtor for a line of credit with a creditor to the amount of $500 and obligating the guarantor to pay for any goods bought by the debtor to the amount of $500, in case he should not do so, was a continuing one for any balance that may be due at any time, not to exceed $500.

The undisputed facts and circumstances surrounding the transaction involved in this case point unerringly to only one end, that is, that the defendants signed the instrument sued on, to enable Sam H. Lane to establish and use in his printing business a line of credit with plaintiff. Defendants limited their liability to $400, a thing they

had a right to do; but plaintiff does not seek to recover of them a greater sum than they agreed to pay. This is the view taken by the trial court. The plaintiff must lose the excess in their account over the amount guaranteed by the defendants, but this is attributable to no fault of the defendants.

We see no error in the judgment of the trial court and it is our order that it be affirmed.

Affirmed.