**E. R. REECE, Appellant,**

v.

**The FIRST STATE BANK OF DENTON, Texas, Appellee.**

No. 17908.

Court of Civil Appeals of Texas, Fort Worth.

Sept. 15, 1977.

Rehearing Denied Oct. 13, 1977.

L. Royce Coleman, Jr., Denton, for appellant.

Kelsey & Wood and D. Michael Gregory, Denton, for appellee.

## OPINION

SPURLOCK, Justice.

This is a case involving a continuing guaranty contract. The First State Bank of Denton, Texas, brought suit against E. R. Reece to enforce a continuing guaranty contract that he had signed to enable Denton County Tractor Company, Inc. to obtain needed financing. The trial court rendered judgment for the bank for $1871.81, which was the amount due on a delinquent corporate note, and for $710.41 as attorney's fees.

We affirm.

Reece was a stockholder and vice-president in the now defunct Denton County Tractor Company, Inc. Shortly after commencing business, the tractor company needed outside financing and sought funds from the bank for that purpose. The bank agreed to extend a line of credit to the tractor company in the amount of $25,-000.00, if Reece would execute a continuing guaranty contract. There is no dispute that Reece executed this contract. Pursuant to the terms of this document, the bank advanced funds to the tractor company which were repaid.

The board of directors of the tractor company passed a corporate resolution authorizing three of its corporate officers including Reece, its vice-president, to secure loans from the bank on its behalf. A promissory note for $8680.32, purportedly signed by Reece on behalf of the tractor company, was made payable to the bank for the purchase of the two corporate automobiles. The bank did supply the $8680.32 and the tractor company received the benefit thereof. Reece denies signing the note. This promissory note became delinquent. The bank foreclosed on the two automobiles, sold them, and credited the proceeds of the sale to the balance due on the promissory note. A deficiency on the note resulted from this foreclosure and sale.

By his first point of error, Reece contends that the trial court erred in rendering judgment for the bank, because the phrase "at my request," which is contained in the guaranty, allegedly means that additional funds must be requested by the guarantor. By his second point of error, he contends that the trial court erred in rendering judgment for the bank because the evidence shows that both parties allegedly intended that Reece was to request additional funds pursuant to the guaranty.

■ The controversy centers around the meaning of the phrase "at my request" contained in the guaranty contract; the disputed phrase appears in the first sentence of that document. It reads as follows:

"In Consideration of the First State Bank of Denton, Texas *at my request,* giving or extending terms of credit to Denton County Tractor Co. of Denton, Texas, hereinafter called 'debtor,' I hereby give this continuing guaranty to the First State Bank, Denton, Texas, hereinafter called 'Bank,' its transferees or assigns, for the payment in full, together with all interest, attorney fees, other fees, and charges of whatsoever nature and kind, of any indebtedness, direct or contingent whether secured or unsecured, of said debtor to said Bank up to the amount of Twenty-five thousand and no/100 Dollars ($25,000.00), whether due or to become due, and whether now existing or hereafter arising. . . ." (Emphasis added.)

The bank contends that the guaranty contract signed by Reece is absolute and unconditional and places the primary obligation for payment upon Reece for any indebtedness of the tractor company to the bank, up to $25,000.00. In response to Reece's contention that he had to approve each advance of funds, the bank points out that the continuing guaranty contract expressly provides to the contrary. On this point, the contract provides:

"I do furthermore bind and obligate myself, my heirs and assigns, in solido with said debtor, for payment of the said indebtedness precisely as if the same had been contracted and was due or owing by me in person, hereby agreeing to and binding myself, my heirs and assigns, by all terms and conditions contained in any note or notes signed or to be signed by said debtor, making myself a party thereto; *hereby waiving all notice including*

*notice of any such indebtedness and of demand, presentment, protest or notice of demand or non-payment and of notice of any act to establish the liability of any party* or any commercial or other paper, indebtedness or obligation covered by this guaranty; *I do further waive all notice and all pleas of discussion and division and I agree upon demand at any time, to pay to said Bank, its transferees, or assigns, the full amount of said indebtedness and the other items set forth above,* up to the amount of this guaranty, . . . ." (Emphasis added.)

 In addition to this waiver of notice contained in the guaranty contract itself, there is case law which rebuts Reece's contention that his obligation under the continuing guaranty contract arose only if he requested a particular advance of funds. In fact, the accepted legal meaning of "continuing guaranty" is contrary to Reece's contention. In *Blount v. Westinghouse Credit Corporation,* 432 S.W.2d 549, 553 (Tex.Civ.App.—Dallas 1968, no writ), the court quoted with approval the following C.J.S. definition of continuing guaranty:

"A continuing guaranty is one which is not limited to a single transaction, but which contemplates a future course of dealing, covering a series of transactions, generally for an indefinite time or until revoked. *It is prospective in its operation and is generally intended to provide security with respect to future transactions, within certain limits, and contemplates a succession of liabilities, for which, as they accrue, the guarantor becomes liable."* 38 C.J.S. *Guaranty* § 7 at 1142. (Emphasis added.)

Also see *McGhee v. Wynnewood State Bank,* 297 S.W.2d 876 (Tex.Civ.App.—Dallas 1956, writ ref'd n.r.e.) and *Pittinger v. Southwestern Paper Co.,* 151 S.W.2d 922 (Tex.Civ.App.—Fort Worth 1941, no writ) for other cases dealing with a continuing guaranty.

In the present case, Reece has denied that he signed the note on behalf of the corporation, but he has admitted that he signed the continuing guaranty. For purposes of this appeal, the bank's counsel has conceded that Reece's signature on the corporate note is a forgery; however, the proceeds of the note were used to purchase two automobiles, and title to these automobiles was taken in the name of the corporation. This taking of title in the name of the tractor company increased the assets of the corporation. What effect, if any, does the forgery of the maker's signature on a corporate note have on the liability of the guarantor? This precise question has been carefully considered and answered by the Texas Supreme Court in *Universal Metals & Machinery, Inc. v. Bohart,* 539 S.W.2d 874 (Tex.1976). On this point, the court wrote:

"The guarantor, who contracted as a primary, absolute, unconditional obligor, is not freed from liability because of the forged signature of the maker." *Id.* at 877.

It is apparent to the court that Reece's liability on the guaranty contract in no way depends upon whether the signature on the promissory note was a forgery. We emphasize that in this case, Reece is not being held liable because of his alleged signature on the note, but on the guaranty contract that he signed.

We have carefully considered Reece's points of error, and each is overruled.

The judgment of the trial court is affirmed.